Mr. Justice NELSON
 

 delivered the opinion of the court.
 

 The patent is for improvements in harvesting and mowing machines, and consists chiefly in this, namely: the construction and combination of two frames, the one for supporting the driving-wheel, and the other.for supporting the'cutting apparatus, and hinging the same together in such a manner that the driving-wheel and cutting apparatus may each follow the inequalities of the ground independently of each other, and to be bolted rigidly together for supporting the cutting apparatus at any desired height. After giving a description of the machine sufficiently exact and precise as to enable any one skilled in the- art to construct it, the claim is as follows:
 

 “The hanging of the driving-wheel in a supplemental frame, or its equivalent, which is hinged at one end to the main frame, whilst its opposite end may be adjusted and secured at various heights, or be left free, as desired, whereby the cutting apparatus may be held at any given height for reaping, or be left free to
 
 *679
 
 accommodate itself to the undulations of the ground, for mowing, as substantially described.”
 

 The surrender of this patent was made by the assignees on account of a defect in the claim, the patentee having failed to embrace within it the hanging of the driving-wheel in the supplemental frame, and its connections with the main frame to which the cutting apparatus is attached, and by means of which both the driving-wheel and cutting apparatus were made to follow the inequalities of the ground independently of each other., These devices were fully described in the specification, drawings, and model, and were embodied in the construction of the first machines. The patent, we have seen, was granted February 10, 1852. The first machine was built and successfully tried in the harvest of 1850. Twenty-one were made and sold the next year (1851), and fifty or sixty the year following, all entirely successful.
 

 The defendants set up in their answer, and gave in evidence two patents for harvesters, which they claimed antedated this invention of Dinsmore.
 

 The first, Nelson Platt’s, of La Salle County, Illinois, June 12,1849; the second, Alfred Churchill’s, Kane County, same State,-March 8, 1841. There is no proof in the record in resjaect to these patents. Whether any machine was ever constructed under either of them, or went into practical use if constructed, or whether each were but an imperfect and abandoned experiment, are matters apparently regarded by the counsel who introduced them as of no great importance. Nothing appears to be known in respect to them, except that they were found among the records of the patent office, and have relation to the subject of grain harvesters. Whatever may have been their merit, however, as harvesters, they can have no material bearing that we can perceive upon this invention of the complainants, for, as it respects the peculiar device for which the present patent was granted, it is not to be found in either of them; neither in the specification or 'claims.
 

 A rejected specification and drawing were also given in
 
 *680
 
 evidence of E. P. Covett, of Philadelphia, on the part of the defendants, on the point of novelty; but this was an application made to the patent office as late as 1852, two years after the invention of Dinsmore. •
 

 This closes all the evidence in the case on the question of novelty, and which requires no further comment. ■
 

 The only remaining question is as to the infringement. The defendants’ answer itself goes far towards making out an infringement, stripped of the coloring generally given to a case stated in the pleadings. It is admitted, the defendants’ harvester is constructed with a main frame which carries the working parts of the machine — that is, the cutting apparatus — and to this main frame is attached a secondary (supplemental) frame, which carries the driving-wheel. The secondary frame, it is said, is not left free to play up and down, but is prolonged beyond the driving-wheel to a standard in the form of an arc, that rises from the rear of the main frame. This standard is provided at various heights with holes, which secure said secondary frame, and with it, the axle of the driving-wheel, at certain fixed distances above the main frame. Defendants say that their driving-wheel is not hung upon a crank shaft, and that their main and secondary frames are hinged in the opposite direction from that in which they are attached in the machine patented to Dins-more. We have a model of the defendants’ machine before us, and the-above is a pretty fair description of it; and it will be seen to embrace every substantial element found in the construction and arrangement of the Dinsmore machine. There are the two frames, the main and secondary, or supplemental, the one supporting the cutting apparatus, the other the driving-wheel, hinging the two frames together in such a way that the driving-wheel and cutting apparatus may each follow the inequalities of the ground independently of each other, and may also be bolted rigidly together for supporting the cutting apparatus at any fixed height. Every advantage in reaping or mowing uneven or stony ground by the new and peculiar device of Dinsmore in the construction and arrangement of his machine, is found in that of the
 
 *681
 
 defendants. The form in some parts is changed, their two frames are hinged at different ends, different names are given to the same things, and different mechanical arrangements in the gearing are used to produce corresponding results, and, as is claimed, better results, although we perceive no evidence of this in the record.
 

 An expert, Mr. Young, an experienced machinist, engaged in building this class of machines, who had a model of the defendants before him, was inquired of if he found in its construction two powers — the one for supporting the driving-wheel, and the other for supporting the cutting apparatus? He answered that he did. He was inquired of if he found the two frames hinged together in such a manner that the driving-wheel and cutting apparatus may each follow7 the irregularities of the ground independently; and also, if they were bolted rigidly together for supporting the cutting apparatus at any desired height? He-answered that he did. He was asked if he found the driving-wheel represented in the model as hung in a supplementary frame ? He answered that he did. Also, if he found the supplementary frame hinged at one end to the main frame? He answered that he did, and that its opposite end could be adjusted at various heights, or left free, as desired. Do you find these several parts so constructed and arranged that the cutting apparatus may be held at any desired height for reaping, or-be left free to accommodate itself to the undulations of the ground, for mowing ? He answered he did.
 

 Another witness, Mr. Dunning, supports in all respects the evidence above given; and there is no substantial contradiction of this account of the construction and arrangement of the defendants’ machine.
 

 There is a good deal of conflicting evidence on a point that is not at all controlling in the case, namely: whether the defendants’ machine would work well in mowing without adjusting the wheel frame to the standard firmly at a given height. There are respectable witnesses on both sides of this question.
 

 Decree affirmed.