CITIZENS' NATIONAL BANK v. L. M. GREEN and wife.

*Homestead—Income Therefrom—Personal Exemption—Husband and Wife.*

1. A husband cannot loan money to his wife, both being insolvent.

2. All property is held subject to the payment of the debts of the owner, except in so far and to the extent only that it has been specifically exempted.

3. The homestead law does not vest in the owner any new rights of property; it only imposes a restriction upon the creditor that in seeking satisfaction of his debt, he should leave to the debtor untouched five hundred dollars of his personal and one thousand dollars of his real estate.

4. The income derived from a homestead is not likewise exempt from liability for the owner's debts, and all acquisitions of property derived from such income are subject to sale under execution against the debtor; and the same is true of the natural increase of personal property set apart to the debtor as exempt from sale under execution.

5. G, being insolvent and having had his homestead of the value of $1,000 set apart to him, and his personal exemption to the value of $275.50 allotted, loaned his wife $300, being the proceeds of the sale of cotton raised on the homstead; with it (and $200 belonging to her) the wife purchased certain other real estate taking the title to herself; in an action by a judgment creditor to subject the land to the payment of his debt, *it was held,* that the creditor had a lien upon three-fifths of the land under and by virtue of his judgment against G.

(RODMAN, J. *Dissenting.*)

CIVIL ACTION, tried at Spring Term, 1877, of WAKE Superior Court, before *Buxton, J.*

The case states: The plaintiff had heretofore obtained and docketed a judgment against defendant L. M. Green, at June Term, 1875, of said Court, for $2132 as security for C. B. Harrison. Execution issued thereon, and on the 3d of November, 1875, his personal property exemption to the

value of $275,50, and his homestead to the value of $1,000, were allotted to the defendant; but he appealed from the allotment of the real estate as homestead, and thereupon a re-allotment was made on the 22d of November, 1875, assigning him as homestead, two tracts of land of the value of $1,000,—one of 65 and the other of 130 acres,—the latter tract having upon it a crop of cotton unmatured.

The execution was returned unsatisfied, and on the 26th of January, 1876, the plaintiff commenced this action to subject his interest in a certain other tract of land, alleged to have been bought by him in July, 1875, of one Dean, and which was not embraced in his homestead exemption, to the payment of the plaintiff's debt.

It was also alleged that at the time of this purchase the defendant was indebted to the plaintiff, and that he had the deed executed to his wife to conceal his interest in the land, and to defraud his creditors. The defendant, however, denied the complaint, and alleged that the land was bought and paid for by his wife on her own account, and with funds which she had borrowed from him, and that the transaction was a fair and *bona fide* one.

Upon issues submitted, the jury found that the said land was bought by the defendant's wife, and that three-fifths of the purchase money was paid by the defendant, her husband, which was the proceeds of the sale of property exempt from execution, to-wit, the money derived from the sale of the cotton raised on the said 130 acre tract.

The defendant's counsel asked for the following instructions to the jury: 1st—If the jury shall find that the $300 advanced by the defendant to his wife were the proceeds of the sale of a part of his real estate exemption, then he had the right to give the same to his wife; 2d—If the $300 were a part of said exemption, then he had a right to exchange it for other land of like value, and the land received in exchange would be protected from creditors.

His Honor declined to give the instructions, but told the

jury among other things that according to the evidence the money was advanced by the defendant as a loan to his wife, and that if this was so, it was still his, for the law did not recognize such dealings between a husband in embarrassed circumstances and his wife; that the cotton upon the homestead at the time of its allotment passed to the defendant as a part of the realty, and that after it was gathered and sold, the proceeds became personal property, liable to claims of creditors, unless set apart as a personal property exemption according to law.

Upon the verdict His Honor adjudged the defendant wife, a trustee for defendant husband, in respect of three-fifths of said land, upon which the plaintiff had a lien by virtue of the said judgment, &c. From this ruling the defendant appealed.

*Messrs. Merrimon, Fuller & Ashe,* and *Battle & Mordecai,* for plaintiff.

*Messrs. D. G. Fowle* and *Busbee & Busbee,* for defendant.

BYNUM, J.   A homestead in land to the maximum value allowed by law, had been duly allotted to the defendant L. M. Green. A crop of cotton was then growing upon it, which when matured and gathered he sold, and of the proceeds undertook to lend $300 to his wife, who, with that sum and $200 more which she procured from her sister, purchased the land in question with the privity of the husband, and had the deed executed to herself.

Is this land or any part of it exempt from the debts of the husband ? The husband and wife were insolvent. The husband could not by law make the contract of loan to his wife, so the money advanced to the wife was still his money, and the case stands as if he himself had directly put that much cash into the purchase of the land, and so also a Court of Equity will treat the transaction to the extent of

his advances as if the deed had been made directly to the husband.

It is not material to inquire whether the crop growing upon the homestead at the time it was assigned, was valued as a part of the homestead ; that does not distinctly appear, and we assume that it was not, and could not be so estimated. Nor is it material to inquire whether a crop grown upon the homestead after it has assumed the character of personal property is exempt from the debts of the owner, as to the excess above the exemption allowed by law. It is certain that the debtor is always entitled to the maximum of his personal exemption, and that by so much of this exemption as may be consumed in producing a crop, by that much may he be re-imbursed out of the crop produced, so as to maintain the exemption to the maximum standard fixed by law. In respect to the homestead it has been held in other States having similar laws, that if it should depreciate in value below $1000 by the burning of the buildings upon it, a fall of prices or other casualty, the owner would be entitled to a re-allotment out of any subsequently acquired land, so as to bring the homestead up to the maximum. So on the other hand, if the homestead should appreciate in value by a rise in prices, the erection of costly buildings, or other improvements, the creditors would be entitled to a re-assessment and re-allotment so as to reach the excess over the value fixed by law. It was so held in Illinois in the case of *Haworth* v. *Travis*, 67 Ill. 301, and in *Stubbleford* v. *Graves*, 50 Ill. 103, where the Court put this case ; "Suppose nine years ago a tract of land containing ten acres, part of a large tract near the city limits of Chicago, had been valued and set off as a homestead, it being then of the value of $1000, and on the land the resident head of the family had erected costly buildings and improvements, by means of which and the rise of property in that locality, its value should now greatly exceed $1000, by

what principle of law or justice could the claimant insist upon holding the land as a homestead, when one-tenth of the tract would fully satisfy the homestead right." * *
* "A debtor being unable to pay his debts has no right to a homestead of greater value than $1000. By securing one to him of that value, his rights are satisfied and the requirements of the law fulfilled." To the same effect is 37 Cal. 175. These authorities are cited to show what has been the construction of the Courts upon similar homestead provisions in the other States, and not as an expression of the opinion of this Court upon a grave question which is not fully presented by the facts of this case.

The single proposition before us, is, what is the status of the additional tract of land purchased by the husband who already has a homestead of the maximum value allotted and set apart by metes and bounds?

This question must be determined by our own legislation, for if it is exempt from the debts of the owner it must be either by some constitutional or some statutory provision. We look in vain for either.

By Art. X, § 2 of the Constitution it is provided " that every homestead and the dwelling and buildings used therewith not exceeding in value $1000 * * * shall be exempt from sale under execution or other final process." By ch. 44 Bat. Rev. it is made the duty of the Sheriff having an execution in his hands to levy upon all the property of the debtor, real and personal, except the homestead and personal exemption as provided in the Constitution and the statutes. And by ch. 55 Bat. Rev. it is provided that whenever the real estate of any resident of the State shall be levied on by virtue of an execution or other final process obtained on any debt, the Sheriff shall cause the homestead to be appraised and set apart by *metes* and *bounds*, not exceeding in value $1000, and then to levy upon the excess.

The language of the law is so plain that there is no room

for construction; and that is, that all the real estate of the debtor except that which is specifically set apart as the homestead, is the subject of seizure and sale under an execution or other final process. No provision of the Constitution or of the statutes supplementary thereto furnishes the ground of a doubt. On the contrary their legal effect is simply to protect the occupant in the enjoyment of the land set apart as a homestead, unmolested by his creditors.  ·

They make no provision and contemplate none for the owner from the homestead or any other source of income to acquire additional lands and estates which shall be protected from his debts, just as his homestead is secured. The Courts cannot by judicial legislation even do so bold a thing as to confer new rights and exemptions in the face of plain legislation by the law making power. It is urged in argument that a homestead having been secured to the debtor by law, all income derived from its use is merely an incident which follows the principal and belongs absolutely to him, and may be used either in improving the property or in other investments; and that unless this be so, the law rather discourages than invites improvement and enterprise, by cutting off all inducement to industry, the legitimate rewards of which when in excess of the exemption would be seized and sold by the creditor.

Such an argument should not be addressed to a Court which cannot make but only construe and administer the law as it is written. If worthy of consideration it should be directed to the Legislature as a reason for changing the law.

There is some misconception as to the nature of the homestead law. The homestead is not the creation of any new estate, vesting in the owner new rights of property. His dominion and power of disposition over it are precisely the same after as before the assignment of homestead. The law is aimed at the creditor only, and it is upon him that all

the restrictions are imposed ; and the extent of these restrictions is the measure of the privileges secured to the debtor; and these restrictions imposed on the creditor are that in seeking satisfaction of his debt, he shall leave to the debtor untouched $500 of his personal, and $1000 of his real estate.

With this limitation upon the rights of the creditor, it is manifest that all the obligations of the debtor to pay his debts, and all his rights to acquire and dispose of property, are the same after as before the assignment of homestead.

The homestead has been called a determinable fee, but as we have seen that no new estate has been conferred upon the owner, and no limitation upon his old estate imposed, it is obvious that it would be more correct to say that there is conferred upon him a determinable exemption from the payment of his debts in respect to the particular property allotted to him. By the recent Act of the Legislature, (Laws of 1876–'77, ch. 253) this determinable exemption has been extended into a fee-simple, and the homestead is now forever exempted from all liability for the debts of the owner contracted after the ratification of the Act, if the Act be constitutional. In the face of this it is still insisted that all after acquired property derived from the income of the homestead is exempt from the debts of the owner. Suppose A has had assigned to him his homestead and personal exemption and by good management he has acquired other lands of the value of $10,000 and other personal property of the value of $5000. It is asked,—why should not these acquisitions belong to him as the natural fruit and product of the exempted property ? The answer is, they do undoubtedly. No one disputes that proposition, on the contrary it is the very proposition we affirm. All such property does belong to him absolutely and with it he may buy and furnish fine houses, have his carriage and horses, supply his table with

the costliest luxuries. But when he refuses to pay the butcher, the latter might well exclaim,

"Upon what meat doth this our Cæsar feed,
That he is grown so great."

As in respect to land, so, as to the personal exemption: Suppose B has had assigned to him as a part thereof stock, cattle, or brood mares. It is again asked,—do not the increase belong to the owner of the dams? Undoubtedly. *Partus sequitur ventrem*, and he may increase the stock by continued production and reproduction to an unlimited extent and value, and it would still be all his absolutely. But the question is what sanctity distinguishes and protects this new wealth which is not equally vouchsafed to the same kind of property belonging to other men?

Again suppose A, having accumulated out of the homestead other lands of the value of $10,000, dies, leaving a child. Under the law of 1876-'77, this land would descend as a homestead, and all the additions made to it by the heir would also be homestead, and so *ad infinitum* exempt from the debts of all the proprietors.

If the construction of the law should be that all acquisitions of property are exempt from execution, it would be the interest of all men at once to take the benefit of the homestead, as well the rich as the poor, for thereby all income derived from it could be capitalized and recapitalized from that one nucleus to the building up of colossal fortunes in defiance of debts past or future. And what a door would be opened to frauds and perjuries, as each owner of a homestead would be tempted to allege and establish that all his estate, no difference how acquired, was but the increment of his own, or the homestead of some remote ancestor.

It would be a fruitless endeavor in the creditor to investigate and sift out and separate the homestead from the non-homestead property, thus confused and confounded. In the progress of time, of course such intricate and per-

plexing investigations must pass from the hands of credi-tors and attorneys to those of the antiquarian until all credit perished.

Such a construction would come in direct conflict with the bankrupt law, for by it only past debts are discharged, while by the homestead law both past and future debts would be practically discharged. The bankrupt's future acquisitions are liable for future debts, while those of the owner of the homestead would not be, and one result of the anomaly would be to transfer the collection of all foreign claims from State to Federal Courts, where a law so plainly impairing the obligation of contracts would not be recog-nized.

Such however is not the proper construction of the home-stead law in this State or any other of our sister States. It is a mistake to suppose the exemption laws are something new in North Carolina, or that their construction has not long been settled. The present law differs in no material respect from that enacted as early as 1773, except that it is more enlarged, and extends to lands as well as personal property. By that law amended and enlarged in its opera-tions from time to time as finally embodied in Rev. Code ch. 45 §§ 7, 8, 9, certain property was exempted from sale under execution, such as a limited quantity of provisions, household articles, cow and calf, &c.

It was never held, that we are aware, that the increase derived from these exemptions, as for example a stock of cattle raised from the cow and calf, was exempt from execu-tion. And in order that the allotment might be perpetu-ated for the protection of both debtor and creditor, commis-sioners were appointed to lay off and assign to the debtor such property as he was entitled to under the Acts and a list thereof was required to be made out and filed among the records of the County Court. Such proceedings are substantially required under the present homestead laws;

yet no one supposed that under the old law the debtor was entitled to anything more than what was thus set apart. The rule of law then was and we think now is, that all of a man's property was and is held subject to the payment of his debts except in so far and to the extent only that it has been specifically exempted. The practical working of this law is not always without its difficulties, as for instance, where the value of the homestead and personal exemption may have been increased by building, the rise of values, or successful crops, or have been diminished in value by opposite causes. Our case is not one of that kind and demands of us no opinion of what would be the rule of adjustment and liablity in such cases, and we give none. Cases of the kind will not be frequent where the excess over the maximum allowance will be so clear and palpable as to provoke litigation on the part of the creditor, and when such cases, they must be adjusted by the good sense of the parties, or like all other inconceivable differences, by the arbitrament of the law.

It is not from a construction of the law at once just to the creditor and debtor, that the latter has cause of apprehension. His danger is in another direction,—the frail and evanescent tenure of the homestead itself. Though bestowed it is not preserved to him. The benevolent purpose of its creation was to save the improvident and their families from the consequences of their imprudence. It is manifest that this purpose fails, and that there is an incongruity between the object and end, so long as the debtor is allowed first to encumber and next to part with what was intended as a provision for himself and family. It cannot be disputed that real and chattel mortgages, liens and incumbrances of all kinds to an unparalleled extent, now cover a large portion of the real and personal property of the State, and that they are generally confined to that class of our population who are theoretically supposed to be enjoying the benefit of

the homestead law.  It is not so much the excess over the·
legal exemptions that needs protection, for there is but little
of it ; but it is the homestead itself that needs protection.

Exemption laws without diminishing the need of credit
have naturally made credit more precarious and insecure,·
and as a result have proportionately increa-ed the premium
which must be paid for it ; so that at few periods of our
history has interest been higher, or borrowed money less re--
munerative than now, and at no former period has the debt-
or class been more under the dominion of the merchant,.
grocer and capitalist.  From the condition of things as so-
ciety is organized, the poor, the needy, and the improvident,
will borrow if they can, and will not hesitate to sell or en-
cumber their homesteads upon ruinous te ms, and the bene-
ficent intentions of the law for their 1 enefit are thus de-
feated.   Whether this result has proceeded from insufficient
or misguided legislation, from the habits of the people, or
from a combination of all these causes, will admit of differ-
ent opinions as men view the situation from a moral or po-
litical standpoint.

In respect of the case before us, it remains for the Court
to declare its opinion to be, that by the unambiguous words
of the Constitution and laws pursuant thereto, the defendant.
L. M. Green is entitled to no other land exempt from his
debts than the homestead which has been appraised and set.
apart to him.   And in the language of a great Judge upon
the construction of the statutes; "It is the duty of all
Courts to confine themselves to the words of the Legislature,.
nothing adding thereto, nothing diminishing."  The conse-
quences if evil can only be avoided by a change of the law
itself and not by judicial action. Sedgwick on Stat. and
Const. Law, 205 to 220.

The exceptions to the evidence excluded, taken by the.

defendant, are untenable and the rulings of the Court below are sustained.

No error.

PER CURIAM. Judgment affirmed.