THOMAS v. FULFORD.

JULIAN W. THOMAS v. N. S. FULFORD.

*Homestead — Determinable Exemption—Reservation of Homestead in a Deed of Trust—Docketed Judgment, Lien of on Homestead.*

Where T. being embarassed but having no docketed judgments against him, gave a mortgage upon his land without his wife joining in the deed, reserving to himself "the homestead and the right to a homestead therein," and afterwards judgments were docketed against him, his homestead was laid off and the mortgagees sold, his wife becoming, through mesne conveyances, the purchaser of the land and with her husband contracted to sell the land to the defendant ; *Held*, in an action for specific performance, that T. and his wife cannot make a good title to the land under Sec. 8, of Act 10, of the Constitution. (AVERY and MONTGOMERY, JJ., dissenting.)

(SYLLABUS SUGGESTED BY THE COURT.)

CIVIL ACTION pending in BEAUFORT Superior Court and heard before *Brown, J. at Chambers,* upon a case agreed as follows :

"1. On and prior to January 15th, 1892, the plaintiff, A. W. Thomas, was seized in fee simple of a lot or parcel of land situated in Beaufort County and in the town of Washington, viz. :   A lot of land in that part of said town known as "Bonner's Old Part," and being a part of lot No. 26, and being the part thereof occupied by the store building now rented to S. H. Reid and fronting on Market street twenty and one-half feet and running back from said street fifty-five and one-half feet, it being all that part of the quarter lot conveyed by Thos. P. Bowen and wife to said A. W. Thomas except that hereinafter to Mary W. Bowen, and being the same parcel of land also described in a deed, A. Mayo and S. R. Fowle, trustees to Jos. W. Bowen, and attached as Exhihit "B."

"2. That on the said 15th day of January, 1892, the said A. W. Thomas (his wife not joining therein) executed a deed in trust to A. Mayo and S. R. Fowle, Trustees, in which he conveyed all his property, including the above named lot of land in trust, for the benefit of his creditors. In said deed in trust the said A. W. Thomas excepted from the operation thereof his "Homestead estate and the right to a homestead therein."

"3. The homestead of the said A. W. Thomas was regularly allotted to him and included the part of lot of land described in paragraph one hereof, which said return and allotment is recorded in the Register's office of Beaufort County in Book..........., page ....., and is herein referred to and made a part hereof, and it is admitted that the allotment of homestead was valid and regular in all respects.

"4. Under the power of sale contained in the said deed of trust from A. W. Thomas, the said A. Mayo and S. R. Fowle, Trustees, on the 3rd day of July, 1894, sold the parcel of land described in paragraph one hereof to Jos. W. Bowen and executed a proper deed therefor in fee.

' 5. On the 25th day of July, 1894, the said Jos. W. Bowen conveyed the said parcel of land to the co-plaintiff, Julia W. Thomas, by proper deed in fee.

"6. That on or about the first day of September, 1894, the plaintiffs contracted and agreed with the defendant to sell and convey to him by proper deed a good and indefeasible estate in fee simple to the lot of land described in paragraph one hereof; and also another parcel of land adjoining the same and described as follows, viz. : A lot or parcel of land situated in the town of Washington and in that part of said town known as "Bonner's Old Part," and being a part of lot No. 26, beginning at a point on the east side of Market street a distance of one hundred and five feet from the southwest corner of said lot No. 26 at the

corner of Main and Market streets, and thence running northwardly along Market street a distance of six feet; thence eastwardly in a line paralled to Main street a distance of one hundred and five feet; thence southwardly in a line parallel with Market street a distance of six feet; and thence a distance of one hundred and five feet to the point of beginning on Market street. And the defendant agreed to pay therefor the sum of twelve hundred and fifty dollars, which said agreement is in writing and duly executed.

"7. That there were no judgments docketed or in force against said A. W. Thomas at the time of the execution by him of the deed of assignment to said Fowle and Mayo, see exhibit "A." That subsequent to the execution and recording thereof, and at the time of the laying off, allotting the homestead of A. W. Thomas in the *locus in quo*, there were docketed certain judgments against said A. W. Thomas and in favor of certain creditors, which judgments have not been satisfied.

The existence of these judgments, which defendant claims are liens upon said land, is wherein defendant says the title offered to him by plaintiffs is defective.

"8. The plaintiffs, A. W. Thomas and Julia W. Thomas, have tendered to the defendant a deed appropriate in form conveying in fee simple both the above described parcels of land, but the defendant declines to receive the said deed or to pay the purchase money therefor as agreed, upon the ground that the plaintiffs are not seized of an estate in fee simple in the lot of land described in paragraph one hereof. It is admitted that the plaintiff Julia W. Thomas is seized in fee of the second lot of land embraced in the agreement to convey and described in this paragraph."

The questions submitted to the Court upon this case are as follows: Are the plaintiffs seized of an estate in fee

THOMAS *v.* FULFORD.

simple in the lot of land described in paragraph one hereof?

If this question is answered in the affirmative, then judgment is to be rendered against the said defendant, N. S. Fulford, for the amount claimed, viz., the sum of twelve hundred and fifty dollars, and for costs; provided the plaintiffs shall tender and deliver to the defendant a good and sufficient deed in form conveying an estate in fee simple in both the parcels of land described in paragraph six thereof.

If this question is answered in the negative, then judgment is to be rendered against the plaintiffs, dismissing the action.

His Honor being of the opinion that plaintiffs A. W. Thomas and Julia W. Thomas, could, conjointly, execute a good title in fee to the lots, adjudged that they should execute and deliver a deed therefor in fee simple duly probated and with proper privy examination, and that they should recover from the defendant the sum of $1,250 and costs. From this judgment the defendant appealed.

*J. H. Small*, for plaintiff.

*W. B. Rodman*, for defendant (appellant).

FURCHES, J.: The homestead provision of the Constitution of 1868 has given rise to many interesting and troublesome questions. And it must be admitted that some of our decisions are not in harmony, and the homestead is by no means a settled question. We do not propose in this opinion to give a critical examination to the many cases we have on the homestead, but to treat it mainly as an original question, referring only to a few cases which we think sustain our view or illustrate our argument.

This case presents very nearly every question of the homestead that has come before this Court for its consideration.

It presents these questions—what is a Constitutional homestead?—when does it commence? and how long does it continue?—when and how can the homesteader sell his homestead estate and what does the purchaser get?—Is the homestead exemption personal in its naturé and operation or is it in *rem.?*

Then, what is this homestead? In some of the early decisions it is treated as an estate and called a determinable fee; but this doctrine has long since been abandoned and we have numerous decisions that hold the homestead is not an estate but an exemption only. This we think is true. But what is it that operates, and how does it operate to exempt the homesteader's land from sale by execution—is it *in personam* or is it *in rem?* We admit that our more recent decisions are disposed to treat it as a personal privilege. This we think is an error and has led to most of the troubles we have had in construing the homestead, and has brought about the great conflict in our decisions.

We are of the opinion that it is not personal, but is *in rem*—that it is a condition, a quality, created by the Constitution, which attaches to the land, whereby an estate is exempt from sale. This, it seems to us, is the great question in the case and first to be determined.

Then what is exempted? Land. What is it exempted from? Execution—*fi. fa.* It is the land the creditor is trying to sell—not the debtor. The homestead provision exempts the debtor from nothing. It is like a warranty attached to the land and runs with the estate wherever it goes and enures to the benefit of any one that shall hold the estate until the homestead shall end.

The next question is, when does this homestead condition attach, and can the homesteader (if a married man) sell the homestead without his wife's joining in the con-

veyance? And our opinion is that the homestead condition attaches at the moment when the conditions are complied with. That the condition created by the Constitution is always present, and as soon as it finds a resident of the State—the owner and occupier of land—the condition attaches. And the homesteader can no more sever it from the estate than he could sever a warranty that had attached from the estate. A sells to B with warranty. B sells to C without warranty. Still C gets the benefit of A's warranty because it was attached to and ran with the estate. And B could not sell the estate and reserve the warranty. Neither could he sell the estate to C and the warranty to D for the reason that it was attached to and ran with the estate. So, if we take the definition of a homestead given above—"That it is not an estate but only an exemption"—and add to it the definition given by that great Jurist Chief Justice PEARSON in *Littlejohn* v. *Egerton*, 77 N. C., 384, that, "A homestead right is a quality annexed to land whereby an estate is exempt from sale under execution for debt" and "is not a personal trust," we have a full and complete definition of a constitutional homestead.

Then it follows, as a general rule, that the homesteader cannot sell the homestead unless the wife joins him in the conveyance. Article X, Section 8, of the Constitution, provides that any sale he makes of the homestead estate without his wife joining him in the deed of conveyance, shall be void. And if, as we have seen, the homestead conditions attach as soon as it finds a resident of the State, the owner and occupier of land, there never is a time when he can sell the *homestead* estate without his wife joining him in the deed of conveyance. Doubtless there are exceptions to this general rule. But they are the exceptions and not the rule.

We would think, where a homestead had been laid off

and located, the husband might sell and convey any land he owned outside of this boundary without his wife's joining him, for the reason that the constitutional protection does not attach to his other land outside of this boundary. There may also be an exception where the marriage took place and the land was acquired before the Constitution of 1868 under the principle in *Sutton* v. *Askew.* And there may be other exceptions that do not occur to us now.

We are aware it has been held otherwise in *Hughes* v. *Hodges,* 102 N. C. 236, in *Fleming* v. *Graham,* 110 N. C. 374, and probably in other cases. In *Hughes* v. *Hodges* it is held that the general rule is that the homesteader can convey without the joinder of his wife, and where it is necessary for her to join is the exception. And four conditions are specified, in which it is necessary for her to join—all grounded upon the idea that there is no homestead until the homesteader is about to become insolvent. This position, we think, must be incorrect. It is not the condition of the homesteader that creates the homestead condition, but the force of the Constitution attaching to and acting upon the land. The construction we give to Section 8 of Article X of the Constitution is in accord with the plain and simple language of that article. While the construction given it in *Hughes* v. *Hodges* is, as we think, adding to what is contained in the Constitution. This interpretation of the homestead estate relieves the Court from many troublesome questions—such as to when it is necessary for the wife to join in the conveyance, and as to the duration of the homestead exemption in the hands of a purchaser.

That a sale of the *homestead* estate by the homesteader without the joinder of his wife is void and passes nothing. That if he sells and his wife joins in the conveyance, and there are no incumbrances at the time of the sale, the pur-

THOMAS *v.* FULFORD.

chaser gets whatever estate the grantor had, free from incumbrances. But if there are judgment liens on the land at the time of the conveyance by husband and wife, the purchaser takes the estate subject to such liens, but protected from sale under execution upon said jugdments to the same extent that the homesteader and his family would have been if they had not sold, because the homestead exemption is a condition that runs with the estate.

But there are other questions involved in this case. Thomas, being embarrassed, though there were no docketed judgments against him, made a mortgage to Fowle and Mayo without his wife's joining him, in which he made the following reservations : "provided that the party of the first part hereby excepts and reserves from the operation of this deed the homestead estate, and the right to a homestead therein." Since the making of the mortgage, judgments have been docketed against Thomas, his homestead has been laid off, the mortgagee's have sold, and by mesne conveyances from the mortgagees Thomas' wife has become the purchaser. And she and her husband have contracted to sell to the defendant, and he refuses to comply with the terms of the sale, alleging that the plaintiff cannot make him a good title to the land.

It is admitted by the plaintiff that if Thomas reserved the estate in the land, the docketed judgments would be a lien, and they could not convey perfect title. But they contend that he did not reserve the estate but only the homestead exemption. And this being so, there was no estate for the judgment liens to act upon and attach to. And it is further contended that there being no judgments against Thomas at the date of the mortgage, he had a right to make this mortgage without his wife's joining him in the conveyance. *Hughes* v. *Hodges, supra.*

Treating the mortgage for the present as an effective

conveyance, it is perfectly manifest to us that he reserved the estate. He says that he "excepts and reserves from the operation of this deed the homestead estate," and what authority have we for saying that he did not? But he further says "And the right to a homestead therein." Why make this last exception and reservation if he had reserved this and nothing more in the first exception and reservation?

· But we have shown in a former part of this opinion that he could not sell the estate and reserve the homestead which is a condition attached to the land and runs with the estate. And besides the other reasons we have given why he could not convey without his wife's joining him in the deed as provided in se ;tion 8 of article X of the Constitution, we now propose to show that he could not do so, under the decision of *Hughes* v. *Hodges*, *supra*, as it is contended he could. That case makes four exceptions to the general rule that the husband can convey without his wife's joining in the conveyance. And the third exception is, where the husband makes a mortgage reserving the homestead, which has to be laid off before the trust can be foreclosed. So, we see that this third exception contained in *Hughes* v. *Hodges* is direct authority for holding that the mortgage deed of Thomas to Fowle and Mayo was utterly void and passed no estate. There is error and the judgment is reversed.

FAIRCLOTH, C. J.: Concurring in the opinion of the Court, I will not repeat the argument but only write a short opinion in addition thereto. Prior to *Littlejohn* v. *Egerton*, 77 N. C., 379, the homestead had not been well defined. That case was fully and throughly considered and the Court unanimously held that "a homestead right is a quality annexed to land whereby an estate is exempted

THOMAS *v.* FULFORD.

from sale under execution for debt, and cannot be defeated by failure of a sheriff to have the homestead laid off by metes and bounds," like a condition annexed to land whereby an estate may be defeated.    At the next Term of the Court the case of *Bank* v. *Green*, 78 N. C., 247, was decided.    That was an action by a creditor to subject another tract of land, which had been paid for by the income of the homestead and personal property exemption, and did not raise the question of a homestead definition. The Justice who wrote the opinion, after deciding the case, took the occasion to say, "The homestead has been called a determinable fee, but as we have seen that no new estate has been conferred upon the owner, and no limitation upon his old estate imposed, it is obvious that it would be more correct to say that there is conferred upon him a determinable exemption from the payment of his debts in respect to the particular property allotted to him," and it is suggested that this mere *dicta* was a new definition of a homestead and overruled *Littlejohn* v. *Egerton, supra.*    This seems to be a strained conclusion.    It is quite improbable that the same Court, in the short space of six months, would, by a simple *dictum*, have overruled their conclusion in *Littlejohn* v. *Egerton*, without any intimation that they so intended.    The words *"him"* and *"particular property"* in the *dictum* are emphasized for the conclusion that the homestead right is *personal* and divorces the right from the homestead estate, sometimes called the reversion.    That view is illogical.    Suppose A conveys land by deed to B and warrants the title.    The warranty is annexed to the land and follows it wherever it may go.    Suppose, then, that the grantor had said in the deed, "I warrant the title to *"him,"* the grantee, in respect to the *particular property* conveyed to him."    Would that have separated the warranty, as a *personal* thing from the land?    The ques-

Thomas *v.* Fulford.

tion furnishes the answer.   I cannot see any difference in substance in the definition given in the two cases above referred to.   If the homestead right can be severed from the homestead estate, then the husband may sell the latter to A without his wife's signature, subject of course to her dower right, and he and his wife may then sell the right or homestead exemption to B.   Now, if the homesteader and his wife should die, leaving no other land, the minor children will have lost the homestead to which they were once entitled, and in a manner other than that provided in the Constitution, which could not be done under the definition in *Littlejohn* v. *Egerton*, *supra*.   The definition in *Littlejohn* v. *Egerton*, has been repeatedly recognized and approved by this Court.   In *Gheen* v. *Summey*, 80 N. C., 187, Ashe, J., who wrote careful opinions, said, "It is settled by the construction of this Court that the homestead right is a quality annexed to land, whereby an estate is exempted from sale under execution for a debt and it has its force and vigor in and by the Constitution, and is in no wise dependent on the assent or action of the creditor." In *Adrian* v. *Shaw*, 82 N. C., 474, Ashe, J., said, "The vendee must take it (the homestead estate) with the same quality annexed that had attached to it in the possession of the vendor———for the homestead is a right annexed to the land and follows it like a condition into whatsoever hands it goes without regard to notice."

In *Markham* v. *Hicks*, 90 N. C., 204, Smith, C. J., refers to the definitions in *Littlejohn* v. *Egerton* and *Bank* v. *Green*, *supra*, and says the latter is correct, without any intimation that it overrules the former.

In *Gardner* v. *Batts*, 114 N. C., 496 (1894) the Court recognizes the same principle as in Littlejohn's case and copies the language of the Court in *Adrian* v. *Shaw*, *supra*.

In *Stern* v. *Lee*, 115 N. C., 429 (1894) the Court refers

to *Adrian* v. *Shaw, supra*, and "the long line of cases of like import" on this question—*Adrian* v. *Shaw*, resting expressly on Littlejohn's case.

It must be admitted that the recent decisions of this Court on the homestead matter are not easily reconciled and that they have led to uncertainty and confusion in the mind of the legal profession.

CLARK, J. : Concurring with FURCHES, J., and FAIRCLOTH, C. J., in the result, I concur fully with AVERY and MONTGOMERY, JJ., that "the right to a homestead in a tract of land may be lawfully reserved by the owner in a deed of assignment for the benefit of creditors which purports to convey the fee simple to the land subject to such right," and that the homestead right is "not an estate but a determinable exemption," which is conferred not on the land but on the homesteader, the right being personal and not *in rem* and not running with the land.

These positions seem to me to be settled by the numerous authorities cited in their opinions. I also concur with brother MONTGOMERY that the constitutional restriction against the conveyance of the homestead without the joinder of the wife applies only where such homestead has been allotted. If, therefore, no judgments had been docketed against the homesteader after the deed of assignment was executed, I would concur in their conclusion that said homesteader with the joinder of his wife could convey a good title in fee to the defendant. But such docketed judgments are unquestionably liens upon the homestead, though they cannot be enforced till the homestead right ceases. BURWELL, J., (for the Court) in *Vanstory* v. *Thornton*, 112 N. C., on page 205. Now, the homestead right being personal to the debtor, ceases as to the allotted homestead whenever the lot is conveyed in the manner required by the Costitution, i. e. by deed with

the joinder and privy examination of the wife. Whenever, therefore, the allotted homestead ceases to be a homestead by such conveyance, the exemption being personal, and not a quality annexed to the land, ceases as to that land necessarily, and the judgment liens, if any, come into force ahead of any conveyance. If there are no judgment liens the grantee gets a good title, but if there are judgment liens, when the exemption, extended over the land on account of the right of exemption personal to the owner and occupier, ceases the judgment liens come in force; hence, in this case I concur in the conclusion of Justice FURCHES and the Chief Justice that the plaintiffs cannot convey a clear unincumbered title to the purchaser. The plaintiff having reserved the *homestead* in making the mortgage, that did not pass from him, but was laid off to him and the docketed judgment became a lien on 'it.' Therefore, an unincumbered deed for the homestead lot cannot be made. The *homestead right* on the other hand, being personal and inalienable, could not be conveyed to another with, or without, the homestead lot.

This view of the homestead it seems to me, is the one plainly authorized by the Constitution. It was so held by a unanimous Court in *Fleming* v. *Graham*, 110 N. C., 374, and is sustained incidentally by *Allen* v. *Bolen*, 114 N. C., 560. It is recognized by SHEPHERD, J. in *Jones* v. *Britton*, 102 N. C., on p. 180, when he aptly says that the homestead is "a mere stay of execution, nothing more, nothing less;" by BYNUM, J., in *Bank* v. *Green*, 78 N. C., 247 (a very able opinion) when he terms it "a determinable exemption from the payment of debts" conferred upon the homesteader "in respect to the particular property alloted to him;" by AVERY, J., in *Hughes* v. *Hodges*, 102 N. C., 236, when he points out that PEARSON, C. J., had corrected

Thomas *v.* Fulford.

his inadvertence of terming the homestead in *Littlejohn* v. *Egerton*, a "quality annexed to land," by immediately adding "whereby it is exempted from sale under execution;" by Chief Justice Smith, in *Simpson* v. *Wallace*, 83 N. C., 477, when he speaks of the debtor's right as the homestead "privilege;" in *Campbell* v. *White*, 95 N. C., 344, when he speaks of it as "the measure of the privilege secured to the debtors" and in *Markham* v. *Hicks*, 90 N. C., 204 where quoting *Bank* v. *Green*, he italicises that the privilege is bestowed "*upon him*," "in order," as has been pertinently and forcibly said by Avery, J., "to exclude the idea that any new quality attached to the land and impress the principle that it was in fact a personal privilege conferred upon the debtor, as has since been held distinctly in numerous cases." If, therefore, the homestead, as so many cases hold, is not a quality or estate in the land, but a "determinable exemption personal to the homesteader," a "*cessat executio*," a "mere stay of execution," a "privilege conferred on the debtor," then it would seem to follow, as the night follows the day, that when the homesteader with the wife's joinder, conveys the homestead, as he is authorized by the Constitution, this personal right and privilege do not attach to the land and follow it in the hands of the grantee, but being personal it is attached to and follows the person of the homesteader who can assert it as a "privilege," a "*cessat executio*," a "stay of execution" to "exempt from sale under execution" any other lot upon which he may fix his residence. Thus, he may change his homestead from time to time, and not lose it in changing his residence as he would if the homestead right was annexed to the first homestead he had allotted him, and on its conveyance by him should pass to the grantee to be enjoyed by such grantee *per auter vie* while the homesteader, like the bowman who has shot his last arrow, would be defenceless or

THOMAS *v.* FULFORD.

henceforward, like the Wandering Jew, unable to claim the shelter of a home from the storms and vicissitudes of life.

There have been conflicting decisions, it must be admitted, and two opinions by a divided Court have been lately rendered, taking a contrary view to this— *Vanstory* v. *Thornton*, 112 N. C., 196 and *Stern* v. *Lee*, 115 N. C., 426, the latter made by a bare majority. But it must be observed that the Court could not amend the Constitution, and amid this conflict of decisions the path of safety is to return to the letter of the Constiution "lest we make the word of none effect by our traditions." The words to be found in the Constitution provide this—merely this and nothing more— "Every homestead____ not exceeding in value one thousand dollars_____*owned and occupied* by any resident of this State_____shall be exempt from sale under execution." Clearly this is a *cessat executio*, and exemption from sale of that lot in favor of the "*owner and occupier.*" When by conveyance in the constitutional mode he ceases to be owner and occupier, the exemption from sale ceases. He cannot assign and convey the exemption from sale to any one else, nor is his right to a homestead forfeitable. It is personal and follows him as a constitutional right, to be asserted by him as long as he lives, and by his minor children if he leaves any at his death, to any future lot which he may select as his homestead, and as often as he changes his residence by conveying the one he has. It is said, and doubtless with truth, that the constitutional convention of 1868 voted down the proposition to make the homestead a fee simple, and made it a life exemption on the ground that the latter was more favorable to the debtor, for if the homestead were an estate in fee simple annexed to and running with the land, a conveyance of it would deprive the grantor of all future right to

homestead, since it " could not exceed $1,000, " whereas if it were, as it was made, a mere exemption from execution, the debtor being authorized to convey the land (with his wife's assent) he could assert a new homestead exemption, whenever in the requirements of our busy modern life, he might find it convenient to change his residence.   However this may be, seeing the constitutional provision in the light it is given me to see it, and placing on it the construction which in my imperfect judgment numerous decisions of this Court and the palpable patent meaning of the words require, I concur, though reaching this result by a different process of reasoning, with the conclusion of Mr. Justice FURCHES and the Chief Justice that the judgment below should be reversed.   Almost the identical point discussed in their opinions was held opposite to their contention by PEARSON, C. J., in *Jenkins* v. *Bobbitt*, 77 N. C., 385, where it was decided that a mortgage, reserving the homestead, was valid without the jo·nder of the wife, since she could have no interest (except, of course, the contingent right of dower) either in the excess over the homestead or the reversion, and that case was cited and approved by SMITH, C. J., in *Murphy* v. *McNeill*, 82 N. C., 221; hence I dissent from their reasons.

MONTGOMERY, J., dissenting:   Beyond question the decisions of this Court on the homestead right are regarded by the legal profession as sometimes inconsistent.   And beyond doubt the profession is divided, as the Court has been, in their views respecting those decisions involving the nature and quality of the homestead interest from a constitutional standpoint particularly; some regarding the homestead right as a "determinable exemption personal to the homesteader," a "mere stay of execution," and others regarding it as a quality—estate—inseparable annexed to the land.   The first view seems to me to be the

settled determination of this Court, and it is best in my opin-
ion to let the rule *stare decisis* prevail.    Under the decis-
sions made under the first mentioned view, many titles to
land have been acquired through confidence in their correct-
ness and stability,  and they should be a rule of  property.
"When solemn determinations acquiesced under have set-
tled precise cases and become a rule of property, they
ought, for the  sake of certainty, to be  observed as if  they
had originally formed a part  of the text  of the  statute."
Lord Mansfield in *Wyndham* v. *Chetwyrd*, 1 *Burr*, 419.

I cannot concur with Justice FURCHES, who wrote the
opinion in this case, in  holding that Chief Justice PEAR-
SON, when he said in *Littlejohn* v. *Egerton*, 77 N. C., 379,
that "a homestead right is a  quality annexed to land
whereby an estate is exempted from sa'e under  execution
from debt," meant that this quality was annexed insepara-
bly to every foot of land acquired by a married man since
the adoption of the Constitution in 1868, however much that
might be, and however free from debt he might be, and that
as a consequence every deed for land acquired after 1868,
made by a married man without the joinder of his wife in the
deed, is absolutely void and the purchaser has and can have
no title under it.  It must follow from such a construction as
a matter of course that, if the  homesteader with his wife
should convey his homestead, the purchaser would get the
interest of the homesteader under the decision of *Adrian*
v. *Shaw*, 82 N. C., 474, and the homesteader can never
have another homestead, because if so he would in effect
have two, or more, which the law could not permit.   And
further, this view it seems to me puts an end to those
estates which insolvent debtors have reserved to them-
selves in deeds of assignment made for the benefit of cred-
itors, in which they have reserved their homestead exemp-
tions and authorized the trustee to sell all the land except

the homestead exemption. For in making such convey-
ances they have separated the homestead right from the
body of the land, and this decision decides that this cannot
be done.                                              \

I cannot believe that this is the proper interpretation of
Chief Justice PEARSON's language in *Littlejohn* v. *Egerton*,
as quoted above and my reasons are partly as follows:

In *Lambert* v. *Kinnery*, 74 N. C., 348, JUDGE BYNUM
for the Court (PEARSON being Chief Justice) said: "The
defendant having a vested estate in the homestead con-
ferred by the Constitution can lose or part with it only in
the mode prescribed by law, to-wit, by deed with the con-
sent of the wife evidenced by her privy examination. Con-
stitution, Art. X, Sec. 8." But this Court in the case of
*Mayho* v. *Cotten*, 69 N. C., 289, the same Judges composing
the Court, had construed the meaning of the words quoted
above in *Lambert* v. *Kinnery*, by declaring that Arti-
cle X, Sec ion 8, of the Constitution, referred to the home-
stead after it had been allotted. And further, Chief Jus-
tice PEARSON never afterwards referred to *Mayho* v. *Cotten*
with disapproval, nor to *Hager* v. *Nixon*, 69 N. C., 108
which practically decided the same point. It is not to be
denied, however, that there was conflict between these cases
and the cases of *Adrian* v. *Shaw*, 82 N. C., 474 and *Gheen*
v. *Summey*, 80 N. C., 187, and the inconsistency had to be
removed either by modifying the positions laid down in
*Adrian* v. *Shaw*, or by directly overruling the clear state-
ment in *Mayho* v. *Cotten*, so as to fix a certain principle of
interpretation of Article X, Section 8, of the Constitution.

In *Hughes* v. *Hodges*, 102 N. C., 236, this Court, with
its personnel entirely changed, SMITH being Chief Justice,
confirmed and approved the ruling in *Mayho* v. *Cotten*,
*supra*, with limitations which were deemed necessary, with-
out altering the principles of interpretation adopted in the

last named case.  These limitations disabled the owner of land from conveying the same without the joinder of the wife (1) Where the land in question has been allotted to him as a homestead, either on his own petition or by an officer in accordance with law.  (2) Where no h·mestead has been allotted, but there are judgments against him which constitute a lien on the land, and upon which execution might issue and make it necessary to have his homestead allotted.  (3) Where no homestead·has been allotted, but he has made a mortgage reserving an undefined homestead, which mortgage constitutes a lien on the land, which could not be foreclosed without allotting a homestead.  (4) Where the conveyance is fraudulent as to creditors, and no homestead has been allotted in other lands.

In *Scott* v. *Lane*, 109 N. C., 154 the following is the opinion of the Court : "According to the defendant's testimony, he was indebted to no one else when he executed the mortgages, and there is nothing in the pleadings and evidence to indicate that the mortgaged property had theretofore been allotted as a homestead.   There was no restriction therefore upon the owner's *jus disponedi* and the purchaser at the sale under the mortgage acquired a good title as against the defendant mortgagor subject to the contingent right of dower of the wife if she should survive it.   A case exactly in point is *Hughes* v. *Hodges*, 102 N. C., 236.

In *Fleming* v. *Graham*, 110 N. C., 374 this Court said : "In *Mayho* v. *Cotten*, 69 N. C., 289 it is said that Section 8, Article X, of the Constitution applies only to a conveyance of the homestead after it is laid off.   This is cited and approved in *Hughes* v. *Hodges*, *supra*.   It appears therefore from the authorities that Article X, Section 8, of the Constitution has been construed by this Court for nearly 25 years as applying only to the conveyance of the homestead after it had been allotted.   There were some rulings

THOMAS *v.* FULFORD.

in the meantime inconsistent with this principle of con-
struction, but the decisions for a half dozen years past have
removed these conflicts and established the former rules.
As to the case before the Court, the debtor did not attempt
to convey his homestead at all, but expressly reserved it
from the operation of the deed in trust. I cannot concur
with the Court in its disposition of this case.

AVERY, J., dissenting : The five opinions filed will re-
quire careful consideration in order to determine how our
former adjudications are affected by the decision in this
case.

The Chief Justice and Justice FURCHES place, as I think,
an entirely novel construction upon the language of Chief
Justice PEARSON in *Littlejohn* v. *Egerton*, 77 N. C., 379.
They are of opinion that it necessarily follows from accept-
ing the definition that " a homestead right is a quality an-
nexed to land, whereby an estate is exempt from sale
under execution for debt," that even where husband and
wife join they cannot reserve in their deed the right to the
enjoyment of the rents and profits of the homestead land
until the end of the period of exemption, and convey the
reversionary interest in fee simple. This conclusion seems
to be founded upon the idea that the learned Chief Jus-
tice and the Court for whom he spoke meant that the right
of exemption was indissolubly annexed or fastened to the
fee simple estate. Such an application of an abstract
principle would, in my opinion, overturn the whole struc-
ture of homestead law thus far built up by the arduous
labor and the indefatigable research of all of the Justices
who have served the State for 25 years, and would lead to
the still more deplorable and disasterous consequence of
un-ettling titles founded upon the rules of property enun-
ciated in them. Justice CLARK concurs upon this question
with my brother MONTGOMERY and myself, and thus main-

tains the authority of many of our adjudications, but con-
curs with the Chief Justice and Justice FURCHES upon
other grounds in maintaining that the judgment below
should be reversed, while Justice MONTGOMERY and myself
are of the opinion that it should be affirmed.     That Chief
Justice PEARSON, who formulated the definition, did not
give to it the construction now placed upon it by my
brethren, is evident from the fact that at the term immedi-
ately preceding that at which Littlejohn v. Egerton was
decided, he concurred in the opinion of Justice READE in
*Barrett* v. *Richardson*, 76 N. C., 429 that where land was
sold at execution sale "subject to the homestead" the pur-
chaser acquired the fee simple, to take effect at the falling
in of the homestead right.     Chief Justice PEARSON had too
accurate a knowledge of the adjudications of the Court,
over which he presided, to overrule a decision within a
year after its rendition without knowing it, and both he
and his associates were too manly to designedly make such
a change and conceal or fail to state the facts.     Any such
imputation upon their candor or consistency can be avoided
however if we adopt the theory for which I now contend,
that in applying this abstract definition the Court meant
that the quality attached only till the period of exemption
ceased, or ordinarily till the death of the homesteader and
the attainment by the youngest child of its majority.     The
termination of that period fixed a contingent limit, after
which the unincumbered right to enjoy the fee simple
might be conveyed or reserved.     The same learned jus-
tices, who then composed the Court, had prior to that time
distinctly recognized, as their successors afterwards did,
the authority of the legislature first to provide for the sep-
arate sale of the reversionary interest in homesteads and
subsequently after thousands of such sales had been made
to prescribe by the Act of 1869-70, Ch. 121, that no such

sales should thereafter be made. *McDonald* v. *Dixon*, 85 N. C., 248; *Cotten* v. *McClenahan*, 85 N. C., 254; *Cobb* v. *Hallyburton*, 92 N. C., 652 ; *Lowdermilk* v. *Corpening*, 92 N. C., 333. We must note the fact in this connection that the reversionary interest of thousands of the persons who filed petitions in bankruptcy was sold by decree of the Federal Courts and bought by our people under the impression that we would adhere to our decisions and protect their rights.

But if the right of enjoyment during the period of exemption cannot be sold as an interest separate and distinct from the right to enjoy the fee after expiration of such period, this Court at every subsequent stage of its history has continued to misapprehend the meaning of the definition in *Littlejohn* v. *Egerton* as completely as did the Court in 1877 when they failed to declare *Barrett* v. *Richardson* overruled. Four years later (in 1881) Justice Ruffin, one of the ablest jurists and most diligent and painstaking students who ever adorned this bench, again reiterated the ruling that a valid sale might be made "subject to the homestead." *Wyche* v. *Wyche*, 85 N. C., 96. Again, still later (in 1885) Chief Justice Smith delivering the opinion in *Lowdermilk* v. *Corpening*, 92 N. C., 333 the Court gave its sanction to the separation by a sale "subject to the homestead" and both he and Justice Ruffin based their conclusions not upon the ground that the sales were made to satisfy old debts but in spite of that fact, or, as the idea was expressed by the latter, "even though the debt be one against which no such right existed." The two last named cases expressly refer to *Edwards* v. *Kearsay*, and declare that it does not affect the principle enunciated. In *Long* v. *Walker*, 105 N. C., 90, the Court again held that though the execution creditor might, when his debt had been created before the homestead provision was engrafted in our

Constitution, sell the whole fee, he might also at his option sell "subject to the homestead." As late as the period when the opinion in *Ladd* v. *Byrd*, 113 N. C., 466, was filed (September term, 1893) another Court gave its sanction to the power of the execution creditor to sell "subject to the homestead." It thus appears that not less than fourteen justices have been inadvertent to any such possible construction, as it is now proposed to place upon the language of Chief Justice PEARSON, and through such inadvertence have invited the confidence of the legal profession and the people in the rules of property, which would be overturned by the new doctrine.

It is conceded that the sanction of the Court was given to the validity of the reservation of the homestead right by assignors in making general assignments of their property, both in *Bank* v. *Whitaker*, 110 N. C., 345, and *Davis* v. *Smith*, 113 N. C., 94, and that *dicta* to the same effect appear in *Bobbitt* v. *Rodwell*, 105 N. C., 236, and in *Eigenbrum* v. *Smith*, 98 N. C., 207. *Ladd* v. *Byrd*, *supra*, and cases which had preceded it, had authorized the separate sale of the reversionary interest, subject to the incumbrance of the homestead right, and it had been expressly held in that case, as well as in *Lowdermilk* v. *Corpening, supra*, that in such cases the purchaser of the reversionary interest must await the expiration of the period of exemption before his right accrues. In *Bank* v. *Whitaker, supra*, and *Davis* v. *Smith*, the right of the debtor by reservation in his deed to make the separation just as the husband of the *feme* plaintiff did in the case before us, was as fully recognized. If, then, any respect is to be paid to these adjudications, or any consideration is to be given to the fact that titles depend upon them as rules of property, we should adhere to them, and hold that Thomas passed the title to the reversionary interest, reserving his right of homestead. If author-

117—44

ities are worthy of a moment's consideration, we might add that *Adrian* v. *Shaw* and a number of cases in which the same doctrine has been approved, establish the principle that the deed of the homesteader with the joinder of the wife passes the right of enjoyment, free from sale under execution, for the life of the homesteader at least, thus again indicating a possible limit to the right of enjoyment when the liens are not removed. Justice FURCHES, in his opinion says: "We have shown in the former part of this opinion that he (the homesteader) could not sell the estate and reserve the homestead which is a condition annexed to the land and runs with the estate." The proper construction of this language is admitted by him to be that the portion of the estate covering the period of exemption can in no case be separated from the reversionary interest, and upon this abstract proposition it is insisted that *Hughes* v. *Hodges,* the overruling of which seems to be the objective point, cannot stand. But neither can any early case, in which the courts, State and Federal, recognize the sales of reversionary interest of bankrupts if the construction contended for is to be placed upon *Littlejohn* v. *Egerton.* How many titles depend on the validity of these sales? How many sales of reversionary interests were made before the Act of March, 1870? Must all of these fall under the executioner's axe in order to reach *Hughes* v. *Hodges?*

It is not possible that Chief Justice PEARSON did not understand his own language when he agreed to these decisions and also to *Barrett* v. *Richardson,* or that RUF-FIN, J., failed to make the discovery when he wrote *Wyche* v. *Wyche, supra.* It is manifest that Chief Justice SMITH did not take this view, because he not only wrote *Lowdermilk* v. *Corpening, supra,* sanctioning a sale made "subject to the homestead," but he afterwards followed BYNUM, speaking for the old Court, when, in *Bank* v. *Green,* he said that

THOMAS *v.* FULFORD.

the homestead right was a personal one "conferred upon" the homesteader, thus modifying *Littlejohn* v. *Egerton*, so as to make the homestead a mere personal privilege, as my brother CLARK contends from the beginning. However, that difference amongst my brethren may be adjusted. The next question raised is whether *Hughes* v. *Hodges* is founded upon a correct principle :

1. The opinion is based upon the fundamental idea that the right of alienation is a vested right which is restricted only in so far as the government for the good of society has found it necessary to restrict it. The only case cited on the point was *Bruce* v. *Strickland*, because it was unnecessary to cite other authorities to sustain this hand-book principle.

2. The next proposition was that the power of the male owner to alien his land was restricted only by the inchoate right to dower and homestead, and there was no constitutional or statutory provision prohibiting his conveying, subject to the contingency of dower.

3. It was held that the restriction as to the homestead did not arise till the right to the homestead accrued and the fundamental right of alienation remained unrestricted till that period.

4. It was held that the right did not arise till something occurred which proved the husband's insolvency, unless the husband upon his own voluntary petition caused a homestead to be dedicated to his family.

5. It was declared that when the homestead was allotted in his petition, the right accrued by his own voluntary surrender of his right of alienation.

6. It was held that an outstanding lien in favor of a creditor, whether by judgment or recorded mortgage, was evidence of insolvency, and that when it was found that a

deed was executed to defraud creditors, the right *ipso facto* attached.

If in our case the deed of Thomas had been attacked on the ground that it was executed in fraud of creditors and the jury had found the allegation of fraud to be true, then under *Hughes* v. *Hodges* the homestead right would have attached and the mortgage deed would have been declared void. But the deed has not been assailed, and must be deemed to have been made in good faith.

The opinion of Justice FURCHES assumes that the reservation of a homestead *ipso facto* proves insolvency. Can that be true? Does a voluntary petition to allot a homestead show insolvency? If not, why should the reservation of the right to have one allotted prove it? If this is not true, then the facts in this case do not bring it within the exception in *Hughes* v. *Hodges.*

The opinion of my brother CLARK, as I understand it, is founded upon the views heretofore presented by him in two dissenting opinions as to the right to alien a homestead, and the speculative question whether a resident of the State may sell one homestead with the joinder of the wife (as prescribed in Article X, Sec. 8, of the Constitution) and invest the proceeds of sale in another. If it were pertinent to embark in the discussion, or if it were still an open question another extensive field for investigation and inquiry would be presented. But it would seem that if decisions affecting the homestead are not legal anomalies, the agitation of these questions ought to cease. I refer without further comment to *Stern* v. *Lee*, 115 N. C., 429, *Baker* v. *Leggett*, 98 N. C., 304, *Adrian* v. *Shaw*, 82 N.C., 474, and the same case on the rehearing 84 N. C., 832, *Vanstory* v. *Thornton*, 112 N. C., 196, and the same case 114 N. C., 375, *Gardner* v. *Batts*, 114 N. C., 496, and *Ladd* v. *Byrd.* 113 N. C., 466.

The Chief Justice and my brother FURCHES do not con-
cur with my brother, nor does he with them, as to the
grounds upon which they reach the conclusion that the
judgment in the case at bar should be reversed.    So that, as
no more than two members of the Court concur in any new
theory advanced, the net result of the discussion is to
develop a wide divergence of views, but to overrule no
opinion heretofore delivered by this Court.    As no one
of the five opinions filed is, as a whole or beyond the order
reversing the judgment below, the ruling of the Court, it
may avoid confusion to call special attention to that fact.
Personally, I think it fortunate for the State that these
rules of property have come through the conflict of views
undisturbed.    Whether right or wrong, when every one of
the questions settled by them was *res integra*, now that
titles have been founded upon them, they should be deemed
sacred.    Indeed such is the respect paid to this principle
by the Supreme Court of the United States, that while it
is the custom of Federal tribunals to adopt the construction
placed by the highest appellate court of a State upon its
own Constitution and statutes, that principle will be
departed from where the State tribunal by overruling its
own adjudications destroys a rule upon which property
rights have been founded.    The Supreme judical authority
of a State may bring itself within the inhibition against
impairing the obligation of contracts by interfering with
rights vested under its decisions, just as a legislature may
subject itself to the same condemnation by attempting to
divest rights vested under statutes passed by it.    7 Myers
Fed. Digest, p. 93 ; Patterson Fed., &c., on State Action, pp.
146, 147 ; *Olcott* v. *Supervisors*, 11 Wall., 678 ; *Ford* v.
*Sargent*, 97 U. S., 694 ; *Ohio*, &c., v. *Devot*, 11 How., 432;
*Havmeyer* v. *Iowa City*, 3 Wall., 303.    We cannot how-
ever, as has been suggested, overrule our own adjudica-

THOMAS *v.* FULFORD.

tions, because it would be a violation of the Constitution of the United States to give to the new ruling a retroactive effect.    To violate our obligation to support the Federal Constitution, upon such ground, would be to recognize the vicious theory that we may do what is morally wrong, in the hope that the end may justify the means of attaining it.

Not concurring with some positions taken by the Chief Justice and Justice FURCHES on the one hand, and taking issue with my other brethren upon some other points, none of which will acquire the force of adjudication by a majority of the Court, I wish to enter my dissent only to the conclusion of the majority that the purchaser did not acquire a valid title.    When Thomas executed the deed of assignment, there was no outstanding lien of any kind upon the property.    It was therefore valid as conceded by my brother CLARK, on the day of its execution.    It does not appear that any judgment liens were acquired between that date and the sale of the reversionary interest under the deed of trust, nor does it appear when the homestead was actually allotted.    But before the allotment a judgment was docketed.    Whether the judgment was acquired before or after the sale by the trustees is not material, for if the deed of assignment was valid for a moment, the lien acquired under it could not be ousted by that of the subsequent judgment, which was inferior to it.    If Bowen, the pruchaser under the deed of assignment, acquired title to the reversion, then his good faith being unquestioned he passed it to the *feme* plaintiff.    If the *feme* plaintiff acquired the reversionary interest in her own right with the constitutional authority to convey the same with the written assent of the husband signified by his joinder in the deed, and if the two are expressly empowered by the Constitution, Article X, Section 8, to convey the home-

stead, I am utterly unable to conceive why the deed tendered in this case was not a good one. True, in *Mayho* v. *Cotten*, there was an intimation that the husband's *jus disponendi* was not taken away by the homestead provision until there was an actual allotment made, but the inhibition upon his right was further extended in *Hughes* v. *Hodges, supra.*

I cannot concur in the opinion that the provision of the Constitution allowing the alienation of homestead shall be annulled by so interpolating the proviso that the right shall be limited to instances where no lien is acquired before allotment.