M. F. WILLIAMS v. GEORGE SCOTT and wife.

(Decided April 12, 1898).

*Action to Recover Land—Bankruptcy—Homestead—
Reversionary Interest—Decree—Collateral Attack—
Color of Title—Statute of Limitations—Adverse Pos-
session.*

1. A sale by the assignee in bankruptcy of the reversionary interest in
   land which had been listed by the bankrupt in his inventory as
   subject to his homestead, previously allotted, carries the title
   to the purchaser subject to the homestead estate therein.

2. Where a bankrupt in his petition and schedules declared that his
   homestead had been allotted to him, mentioning the date of the
   allotment and the names of the appraisers, a claim to the land by
   his heir by descent, and a contention by her that there was no
   evidence that the homestead had been legally allotted, are incon-
   sistent.

3. Where the record of the proceedings in bankruptcy is made out ac-
   cording to the requirements of law, and is sufficiently authenti-
   cated, the decree of the District Court therein is not subject to col-
   lateral attack, and, not having been appealed from, is binding on
   the State Courts and upon the bankrupt and all persons claiming
   under him.

4. There can be no color of title without some paper writing attempting
   to convey title, but which does not do it either because of

122—35

want of title in the person making it or because of the defective mode of conveyance used; and, *semble*, that under the Act of 1891 it must not be so plainly and obviously defective that a man of ordinary capacity could be misled by it.

5. The 10 years statute of limitations (Section 158 of *The Code*), does not apply to defendants in ejectment who claim the land by adverse possession, where they have recognized plaintiff's claim and title thereto within that time.

CIVIL ACTION to recover land, tried before *McIver, J.*, at February Term, 1898, of ROWAN Superior Court. The facts appear in the opinion. At the conclusion of the plaintiff's testimony the defendants moved to dismiss the complaint and for judgment as of non-suit, under Hinsdale's Act. The motion was allowed, and plaintiff appealed.

*Messrs. S. E. Williams, E. E. Raper* and *Long & Long* for plaintiff (appellant).

*Messrs. Lee S. Overman* and *L. H. Clement* for defendants.

MONTGOMERY, J.; The plaintiff claims the land and seeks to recover possession of it in this action, commenced on the 6th of January, 1896, under a deed executed to herself and Alice V. Marsh, by John S. Henderson, assignee of Jack Hall, a bankrupt, on the 3d of March, 1874, and registered on the same day. The defendants denied the plaintiff's right to the land, and pleaded further that the claim of the plaintiff is barred by the ten years statute of limitations and that they have been in possession more than 17 years under color of title. It was admitted on the trial, on all sides, that Jack Hall, under whom both the plaintiff and the defendants claim, died in 1878, leaving a widow, who died in November, 1895, and the *feme* defendant, his only

child and heir at law, who was 31 years old at the death of her father; that the *feme* defendant has been in continuous possession since the death of her father; that the plaintiff's cause of action accrued at the death of Hall in 1878; that Alice Marsh died intestate before this action was commenced, leaving the plaintiff, her only heir at law, and that the land in controversy is covered by the deed of Henderson, assignee to the plaintiff. On the trial the plaintiff introduced the deed from Henderson, assignee, to the plaintiff and Alice Marsh, and also the deed of assignment of the bankrupt's effects by the register in bankruptcy, to Henderson, assignee, and also an exemplified copy of the record of the proceedings in the District Court of the United States in the matter of Jack Hall, bankrupt; all of which evidence was received under the objection of the defendants and subject to exceptions. The plaintiff also introduced S. E. Williams, who, without objection, testified as follows :

"I am a son-in-law of the plaintiff, and had a conversation with Mrs. Scott, the defendant, soon after the death of her mother. I asked her if she would give up possession. She said she knew of our claim, and that she thought it hard that we called on her for possession so soon after the death of her mother, and said that Marsh, the father of the plaintiff, had not offered to buy the life estate, but that they wanted to sell to him and had written him several letters to that effect. We were talking about homestead rights. Marsh is the father of plaintiff, and was acting as her agent. Mrs. Scott refused to give up possession. I had a conversation with the defendant, George W. Scott, about six months or a year before the death of Mrs. Hall in regard to this property. It was about the payment of the brick pavement tax. He said, 'We do not own the remainder;

you do, and we ought not to have to pay the tax; we do not know when you will put us out, and I don't think we ought to pay all the tax.' After talking the matter over we came to the agreement that I should pay about $90 and they should pay the balance. I was acting as the agent and attorney of the plaintiff."

On cross-examination the witness stated :

"The whole amount of the tax may have been only $90, and I have paid $40. I do not remember the exact amount, but feel sure there was a $40 or a $90 item."

The plaintiff then rested her case, and upon the defendants' motion to dismiss the action under Chapter 109 of the Acts 1897, the motion was allowed and judgment as of non-suit entered in favor of the defendants, from which the plaintiff appealed.

There was error in that ruling. The deed from Henderson, assignee, to the plaintiff conveyed the reversionary interest in the land, and recognized the right of the bankrupt in the homestead and its allotment to the bankrupt. A sale of the reversionary interest in land by an assignee in bankruptcy, in which a homestead has been allotted, is fully recognized in our courts. *Windley* v. *Tankard*, 88 N. C., 223; *Murray* v. *Hazell*, 99 N. C., 168. The laws of North Carolina prohibit a sheriff from selling the reversionary interest in homestead lands under execution, but they do not prevent the homesteader himself from conveying it. *Jenkins* v. *Bobbitt*, 77 N. C., 385. The assignee takes as a purchaser from the bankrupt under the assignment. *Dudley* v. *Easton*, 104 U. S., 99. The bankrupt, Hall, in his petition and schedule inventoried the land which is in controversy, and added, "this real estate is covered by the homestead exemption allotted to petitioner on the 16th April, 1870,

by W. H. Howerton, W. H. Crawford and F. H. Sprague, and valued by them at $1,000."

The assignment by the register in bankruptcy to Henderson, assignee, conveyed the land subject to the homestead exemption of the bankrupt. It was the assignee's duty to sell all the interest of the bankrupt in the property, subject to the homestead exemption, so that the creditors might receive what was due to them, and the bankrupt be discharged. But the defendants contend that there is no evidence that the homestead has been legally allotted, and that, therefore, the sale of it was unauthorized and the deed conveying it void. This position by the defendants is not a consistent one. The *feme* defendant claims the land by descent from her father, the bankrupt, and in his petition and schedules he declared that his homestead had been allotted to him, mentioning the date of the allotment and the names of the appraisers. The exemption as claimed by the bankrupt was not conveyed to the assignee, and that officer respected the exemption as set out in the petition of the bankrupt, and sold only the reversionary interest in the land. The defendants insist, however, that the record of the proceedings in bankruptcy were incompetent to prove that the defendant had had his homestead allotted and the regularity and right of the assignee to sell the reversion and make the deed therefor. The record was, so far as we can see, made out according to the requirements of the law and sufficiently authenticated. It was not open to collateral attack, and the decision of the District Court in the matter, where it had sole jurisdiction, was, and is, binding on our courts. *Lewis* v. *Sloan*, 68 N. C., 557; *Michael* v. *Post*, 21 Wallace, 398.

The decree of the District Court ordering a sale of the reversionary interest in the land, not having been ap-

pealed from by the bankrupt, concluded him and binds the defendants who claim under him and are privies in blood and estate.   Black on Judgments, Vol. 2, Section 549.

The defendants insist further that the possession of the *feme* defendant, the heir at law of the bankrupt, since his death in 1878, is color of title by descent. Counsel cited us some authorities from other States to that effect, but upon examination it is found that that has been made so by statute.   Whatever the law may be elsewhere, there can be no such thing in North Carolina as color of title without some paper writing attempting to convey title.   In *Tate* v. *Southard*, 10 N. C., 119, color of title is defined to be "a writing upon its face professing to bear title, but which does not do it, either from a want of title in the person making it, or the defective mode of conveyance that is used;" and it would seem, under the Act of 1891, at least, that it must not be plainly and obviously defective, so much so that no man of ordinary capacity could be misled by it. And this has been the definition of the color of title by our courts from time to time, and as late as *Avent* v. *Arrington*, 105 N. C., 377.  . The case of *Neal* v. *Nelson*, 117 N. C., 393, is not consistent with the former decisions of this Court, and we feel that we cannot follow it as the true doctrine upon the subject of color of title.

The contention of the defendants that the ten years statute, Section 158 of *The Code*, applies where it is alleged that the defendant holds adversely, need not be considered, for it appears from the testimony of the witness, Williams, which must be taken as true in this case, that the defendants recognized the claim and the

title of the plaintiff just a year or so before the bringing of this suit.

Error.

CLARK, J., concurring: In addition to what my brother Montgomery has so well said, there is this further consideration. This is not a case of a sale under execution in which the homestead must be set apart, since only the excess can be sold, but the debtor conveys his entire property, subject only to the right to have his homestead set apart by the assignee in bankruptcy. Had the latter failed to set it apart, the debtor could have enforced that right. The property passed to the purchaser by the deed from the assignee in the same plight as the assignee held it, and the right of the debtor to have it allotted by metes and bounds (if it was not done) was personal and determined upon his death, leaving no minor children. Had he left minor children, his right to have an allotment would have survived to them till their coming of age. But the failure to allot would not affect the validity of the conveyance from the debtor to the assignee, or from him to the purchaser, the estate thereby conveyed being merely subject to the right of the debtor to have the homestead allotted out of said property.

As to the statute of limitations, *The Code*, Section 158, applies only to cases "not provided for," and as to actions for the recovery of real estate there are two express statutes; of these, the 7 year statute (Section 141) does not apply because there is no color of title, and the 20 years required under Section 144 had not elapsed when this action was brought; besides, the defendant expressly pleads the absence of visible lines and boundaries, which would be necessary to ripen 20 years possession into title.