JOYNER v. SUGG.

(Filed November 25, 1902.)

1. HUSBAND AND WIFE—*Deeds—Trusts.*

Where the husband buys land and has the deed made to his wife, the land becomes the property of the wife, as against the heirs of the husband.

2. HOMESTEAD—*Exemption—Deeds—Husband and Wife.*

A deed of land in trust, by the husband, in which the wife does not join, reserving the homestead therein to the grantor, passes the entire land, except $1,000 worth thereof. (By DOUGLAS and COOK, J.J.)

3. HOMESTEAD—*Exemptions—Deeds—Husband and Wife.*

A deed of land in trust, by a husband, in which the wife does not join, reserving the homestead of the grantor therein, conveys no interest in the land therein named. (By FUR-CHES, C. J.)

4. HOMESTEAD—*Exemptions—Deeds—Trusts—Husband and Wife.*

A deed in trust, by the husband, in which the wife does not join, reserving the homestead of the grantor therein, passes the entire land therein conveyed, subject only to the determinable exemption in $1,000 worth thereof from the payments of the debts of the grantor during his life. (By CLARK and MONTGOMERY, J.J.)

ACTION by J. H. Joyner and others against Mary A. Sugg and another, heard by Judge *F. D. Winston* and a jury, at April Term, 1902, of the Superior Court of PITT County. From a judgment for the defendants, the plaintiffs appealed.

*Skinner & Whedbee,* for the plaintiffs.
*Jarvis & Blow,* and *Connor & Son,* for the defendants.

DOUGLAS, J.    Blaney Joyner, in 1893, executed a deed of trust to Allen Warren to secure creditors, in which was included the land in controversy, which was conveyed "subject

to and reserving however his (Blaney Joyner's) homestead rights therein as secured by the laws of North Carolina." After due advertisement, according to the terms of the trust, the land was sold "subject to the reserved homestead right of Blaney Joyner," and was bought by R. L. Davis, with whom Blaney Joyner had arranged that it should be bought for his benefit, and the deed thereof was made by Allen Warren, trustee, to said Davis, "subject to the homestead right of Blaney Joyner," and coupled with a parol trust to convey the same to whomsoever Blaney Joyner might direct, and, by direction of Blaney Joyner, said Davis did convey the land, "subject to said Blaney Joyner's homestead right," to his wife, J. A. E. Joyner. Blaney Joyner and his wife united in a mortgage to secure said Davis the purchase money, which was subsequently paid off entirely by Blaney Joyner, his wife paying no part thereof. Blaney Joyner died without issue, and the plaintiffs are his heirs at law. J. A. E. Joyner died subsequently, in 1901, having devised the land to her two nieces, the defendants, who are in possession of the premises.

The plaintiffs seek by this action—

1. To establish that J. A. E. Joyner took the land upon the parol agreement that she would hold the naked legal title for the use of Blaney Joyner in fee, and that he having paid off the mortgage for the purchase money, the plaintiffs, as his heirs at law, are entitled to recover the premises.

But the evidence set out in the record shows no agreement, nor any acknowledgment of a parol trust by J. A. E. Joyner. The parol trust by R. L. Davis in favor of Blaney Joyner was performed by his execution of the conveyance to J. A. E. Joyner, as directed by Blaney Joyner. The mere payment of the purchase money by the latter gave the plaintiffs no rights as his heirs at law as against his wife, to whom he had a right to give the property, except as to creditors, and the creditors are all paid off.

2. The plaintiffs contend that, if they can not establish the parol trust, the original deed in trust to Allen Warren, "subject to the homestead right of Blaney Joyner," is void for uncertainty in both the quantity and quality of the estate, or at least the reservation included the reversion of the homestead, the wife not having joined in the deed; and that Blaney Joyner being dead, the plaintiffs, as his heirs, can recover the land once covered by his homestead, or which would have been so covered, if it had ever been actually allotted.

We may as well frankly say that we find it impossible to fully reconcile all the decisions of this Court upon the subject. We will not try to do so, but will attempt simply to present those principles necessary for the determination of this case in the view we take of it.

This is the first time that this question has come directly before this Court as now constituted. We do not regard the case of *Williams v. Scott,* 122 N. C., 545, as directly affecting the case at bar. In that case the homesteader neither sold nor attempted to sell the so-called reversion of the homestead. It was sold in bankruptcy proceedings, and referring thereto, this Court says, on page 549: "The decree of the District Court ordering a sale of the reversionary interest in the land, not having been appealed from by the bankrupt, concluded him and binds the defendants who claim under him, and are privies in blood and estate." Again, the Court says, in the sentence immediately preceding: "It (the decree) was not open to collateral attack, and the decision of the District Court in the matter, where it had sole jurisdiction, was, and is, binding on our Courts." This was the law of that case.

Our earlier decisions seem based upon the idea that the homestead is an estate. This is apparent from the very sentence quoted from *Jenkins v. Bobbitt,* 77 N. C., 385, upon which the defendants rely, and in which Judge Pearson re-

peatedly uses the terms "homestead estate" and "estate in reversion."

Another quotation is as follows: "But a sale by the owner of a homestead of his estate in reversion stands as at common law, and the owner has full power to sell it." With the highest respect for the great Chief Justice, who evidently regarded the homestead as a particular estate carved out of the fee, we are unable to find that the "homestead estate" had any standing at common law. If an estate at all, it would seem to be a life estate in the homesteader, with a contingent remainder for an uncertain term of years to his children, and an ultimate remainder or reversion back to himself if the land remains unsold, or to his grantee if sold.

One thing at least seems clear: A homestead is either an estate or it is not an estate. If it is not an estate in itself, but is merely "a *quality* annexed to the land whereby an estate is exempt from sale under execution for debt," as was said in Littlejohn's case, then there must be some estate to support the exemption. A naked right of exemption is worthless, unless the debtor has some property that he can retain under the exemption, and he can not retain that which he does not possess. This exemption gives him nothing, but simply keeps that which he already has from being taken away from him.

The idea that the homestead exemption was an estate has been long since abandoned. The theory now of universal acceptance was first clearly enunciated by Bynum, J., speaking for the Court, in *Bank v. Green,* 78 N. C., 247, where he says, beginning on page 252: "There is some misconception as to the nature of the homestead law. The homestead is not the creation of any new estate, vesting in the owner new rights of property. His dominion and power of disposition over it are precisely the same after as before the assignment of homestead. The law is aimed at the creditor only, and it

is upon him that all the restrictions are imposed; and the extent of these restrictions is the measure of the privileges secured to the debtor; and these restrictions imposed on the creditor are that, in seeking satisfaction of his debt, he shall leave to the debtor untouched $500 of his personal, and $1,000 of his real estate. * * * The homestead has been called a determinable fee, but as we have seen that no new estate has been conferred upon the owner, and no limitation upon his old estate imposed, it is obvious that it would be more correct to say that there is conferred upon him a determinable exemption from the payment of his debts in respect to the particular property allotted to him."

It is needless to cite the numerous cases in approval. A brief quotation from one or two will be sufficient:

In *Simpson v. Wallace,* 83 N. C., 477, the Court says: "The assignment of a homestead creates no new estate in the exempted land; it simply ascertains and sets apart a portion of what the debtor owns, of limited value; and relieves it of liability for his debts during a specified period, leaving in him the estate already possessed unimpaired."

In *Markham v. Hicks,* 90 N. C., 204, this Court says: "The argument in support of this contention (that the Sheriff could sell the land subject to the homestead exemption) proceeds upon the misconception that there is a divided estate in the debtor, produced by the separation and setting apart of the exempt from the remaining land, one enduring for his own life and prolonged for the benefit of his wife and minor children, the other, the residue of his previous estate."

The Court then held, citing with approval *Bank v. Green, supra,* that the estate can not be so divided, and that the Sheriff can not sell the reversion, even in the absence of statutory prohibition. Therefore it is not an estate. We can not have a shadow without something to cast the shadow; neither can we have a quality of exemption without something to be exempted.

Some confusion may have arisen from the indiscriminate use of the word "homestead," as applying either to the right of exemption or the land exempted. As used in the Constitution, it is evident that the homestead is the land itself. The homestead right is the right to hold and use the land free from execution for debt. In other words, the homestead is the land itself; the homestead right is the right of the owner to hold the land exempt from execution; while the homestead exemption is a quality attached to the land by virtue of said right. The homestead right may exist as a pure abstraction; but there can be neither homestead nor exemption without the land. While the exemption follows from the homestead right, it seems that when once attached it follows the land into the hands of the purchaser, while the homestead right remains in the vendor. This is no longer an open question. So, whatever doubts some of us might have as to its logical correctness, must yield to what has become a rule of property. *Stare decisis.* In any event, it is not involved in this case.

For the homestead right to be of any benefit to a man, it is evident he must own some estate in land to which it can apply. This is clearly the meaning of the Constitution. In Article X, section 2, it says: "Every homestead, and the dwellings and buildings used therewith, not exceeding in value one thousand dollars, to be selected by the *owner* thereof, or in lieu thereof, * * * any lot in a city, * * * *owned* and occupied by any resident of this State, * * * shall be exempt from sale under execution." * * * And again, in section 3, it says: "The homestead, after the death of the *owner* thereof, shall be exempt," etc. And in section 5 it says: "If the *owner* of a homestead die," etc. (the italics are ours). Section 8 provides how the *owner* of a homestead may sell it. Throughout this entire Article appears an inseparable connection between ownership and exemption.

The assignment of the homestead adds nothing to the

owner's title.   It merely locates that part of the land which
is exempt, and which he continues to hold under his former
title.   We do not see how he can sell his land and retain a
mere quality annexed to the land.   We do not say that he
can not, by a proper deed, convey his land with a reservation
to himself of a life estate.   This would be in effect the con-
veyance of the remainder after the life estate.   Perhaps he
could further extend his reservation for the life of his wife
and the minority of his children, but none of these questions
is involved in this case.

The deed of trust to secure creditors under a consideration
expressly states that the land in controversy is conveyed "sub-
ject to and reserving, however, his (Blaney Joyner's) home-
stead rights therein, as secured by the laws of North Caro-
lina."   He does not pretend to convey the so-called reversion
of his homestead.   On the contrary, he expressly reserves all
that the law would allot to him as a homestead if he had made
no deed.   The object of an assignment for the benefit of
creditors is not to give the creditors the right to resort to the
land for the payment of their debts, as that right they al-
ready have or can obtain by means of a judgment.   Its ob-
ject is to prevent the lien of subsequent judgments, and to
regulate the distribution of his assets, either by preferring
such creditors as he wishes, or preventing any preference.
Assignments are usually made in an emergency, when there
is no time to lay off the homestead.   All that the debtor can
do is to reserve the homestead right allowed by law.   What is
that right?   This Court has said in *Bank v. Green, supra,*
that it is a "restriction imposed on the creditor;   *   *   *
that in seeking satisfaction for his debt he shall leave to the
debtor *untouched* five hundred dollars of his personal and
one thousand dollars of his real estate."   This Court has
said in *Simpson v. Wallace, supra,* that it "leaves in him the
estate already possessed *unimpaired.*"   It is held that the

JOYNER v. SUGG.

reversion of the homestead can not be sold under execution, because there is no reversion. *Marcom v. Hicks, supra.* In fact, no part of the land can be sold under execution until the homestead is laid off. Upon such allotment, the homestead—the land itself—is still held by the owner under his former title, and can not be touched, that is interfered with, in any manner. The sale of the fee in reversion would of course interfere with it, and would seriously impair the homesteader's former estate. If he owns the land in fee, he is entitled to any rise in value subject to the liens. A thousand dollars worth of land near one of our growing towns may in a few years become so valuable as to pay off all incumbrances and leave a handsome surplus. But if the reversion has been sold, he has no incentive to improve the property, or render it more salable, as the result of his labor and thrift would go to the speculator who, perhaps, has bought the fee for a nominal price. Therefore, not only the letter of the Constitution, and the decisions of this Court, but public policy, favor the retention of the title in the man who alone can develop the property.

When Blaney Joyner, in executing his deed in trust, reserved his homestead rights, he reserved one thousand dollars worth of the land. Assuming the land to be worth $4,000, in legal effect he conveyed to the trustee only three-fourths of the land, reserving to himself a fourth undivided interest, to which he retained the legal title. To that extent he was a tenant in common with the trustee. This unity of possession could have been severed by the assignment of the homestead, which would have been equivalent to partition. This the trustee does not seem to have done, as he sold the land in its entirety; but he could not convey any greater title than he held. Therefore, the undivided fourth interest remained in Blaney Joyner, as it would have done in the case of any other tenant in common.

Under the facts as developed in this case, we are of opinion that the plaintiffs, as heirs at law of Blaney Joyner, are the owners of an interest in the land in controversy of the value of one thousand dollars, to be estimated as of the time of the execution of the deed of trust by Blaney Joyner to Allen Warren.

We are further of opinion that the remainder of said land passed by said deed from said Joyner to said Warren, and from him to Mrs. Joyner, by whom it was devised to the defendants.

Error.

FURCHES, C. J., concurring.    On the 5th day of September, 1893, Blaney Joyner made and executed a deed of trust to one Allen Warren, upon the land in controversy, containing about 450 acres, and worth, according to the evidence, somewhere about $4,000.    Blaney, at the time of making the trust, was a married man, Jackey Ann Eliza Joyner being his wife, who did not join in the making of said deed of trust, and never signed nor acknowledged the execution thereof. This land was afterwards sold under the deed of trust by the trustee therein named, and was bought by one Davis, in trust for Blaney, who, at the instance of Blaney, conveyed the same to J. A. E. Joyner, and she and her husband Blaney joined in a mortgage to said Davis to secure the purchase money.    Blaney did not live long after this transaction, and since then the said J. A. E. Joyner has died, leaving a last will and testament devising said land to the defendants, who are her nieces—neither she nor said Blaney leaving children or lineal descendants surviving them.

The debt secured by the mortgage of Blaney and wife to Davis has been paid, mostly before the death of Blaney, and the residue before the death of Jackey Ann Eliza.

The deed in trust to Warren was in form a deed in fee sim-

ple, with this provision: "Subject to the homestead exemption of Blaney Joyner."

The plaintiffs are the heirs at law of Blaney Joyner, and claim that as said land belonged before the deed to Warren, belongs to Blaney, and as said deed conveyed nothing, the land belonged to Blaney at the time of his death, at which time it descended to them, and this action is brought to recover possession thereof.

The plaintiffs claim, first, that Davis bought the land for Blaney at the trust sale of Warren, and therefore held the same in trust for him. I do not think this is denied by the defendants, but they say that said trust was discharged when Davis made the deed to J. A. E. Joyner at the request and direction of Blaney; and no new trust was declared when this deed was made, nor when the mortgage was made back to Davis to secure the purchase money he had paid for the land at the trust sale made by Warren. I agree with the contention of the defendants, and with the opinion of the Court as to this transaction between Davis and Mrs. Joyner.

But as to the other point presented by the case on appeal, as to whether the deed of trust from Blaney to Allen Warren conveyed the land therein named and now in controversy, I differ from the opinion of the Court. In my opinion, Blaney could not convey this land without the joinder of his wife, and the fact that he inserted the following clause in said deed of trust, "Reserving, however, his homestead right therein, as secured by the laws of North Carolina," makes no difference in the right of said Blaney to make said conveyance. This consideration of the case involves the much discussed question of the homestead, so much discussed in *Thomas v. Fulford,* 117 N. C., 667. The Court differed so much in its views at that time—every member of the Court filing a separate opinion, which my friend, Col. Edwards, styled "five dissenting opinions in one case," that I was in

hopes it would not return to trouble the Court again, at least while I was a member thereof.   But it is here, and I must meet it with the best thought I am able to give it.

Where a question has been "settled," if a question can become settled, that is, where a question has received for a considerable length of time a uniform construction, it is often better not to disturb it, even if erroneous.   *"Stare decisis."* But this question was not considered settled in *Hughes v. Hodges,* 102 N. C., 236, which was by a divided Court, and which overruled and construed away many of the former opinions of this Court.   It was not considered settled in *Vanstory v. Thornton,* 112 N. C., 196, which was by a divided Court, and overruled a good portion of *Hughes v. Hodges,* and many other decisions.   It was certainly not settled in *Thomas v. Fulford,* 117 N. C., 667, which settled nothing, except the rights of the parties to that action, and there has been nothing since *Thomas v. Fulford* to settle it. I know it is claimed in the opinion of the Court that it is settled by *Jenkins v. Bobbitt,* 77 N. C., 385, and *Williams v. Scott,* 122 N. C., 545.   But upon an examination of those cases, I am satisfied it will be found they do not do so.   It is known to every lawyer who has any practice in bankruptcy, that when the bankrupt claimed his homestead, the Federal Court held that the homestead did not pass to the register by the adjudication, nor to the assignee by his general assignment, and he could not sell it under said assignment.   But upon a petition filed in the cause by creditors where the bankrupt was a party, the Court, unless cause was shown to the contrary, would decree a sale of the reversion and appoint a commissioner (who was usually the assignee) to make sale of the reversion, subject to the homestead right under the State law, and to report said sale to Court.   This was the kind of sale at which the plaintiff bought, in *Williams v. Scott.*   A sale made under a decree of the Federal Court, to

which the homesteader was a party, is claimed as a precedent and as settling the case now under consideration. But
it does not do so, and has no application to this case, and our
Court has decided the same thing in principle. Minor children are entitled to a homestead, but this Court has held that,
in an application to sell real estate for assets by the personal
representative, where the minors are properly made parties
to such application and make no defence, and a decree of sale
is entered against them, and the land sold, they are estopped
from afterwards claiming a homestead.

This brings me to a consideration of the main question—
Did the trust deed of Blaney Joyner to Allen Warren convey
the estate in the land in controversy, no homestead having
ever been laid off or allotted to him or his wife, and his wife
not having joined him in the deed?

It seems to me that if it were not for the many conflicting
opinions as to whether it does or not, there would be but little
trouble about it. If Article X, section 8, of the Constitution,
which says, "Nothing contained in the foregoing sections of
this Article shall operate to prevent the owner of a homestead
from disposing of the same by deed, but no deed made by
the owner of a homestead shall be valid without the voluntary
signature and assent of his wife, signified on her private examination according to law," I say if this section of the Constitution was now to be construed for the first time, in my
opinion it would be held that, in such cases as this, the wife
should join in the deed, or it would be *invalid*. The Constitution says it shall "be void" if she does not sign the deed
and is not privately examined. And the trouble arises now
from the fact that the Court has undertaken to construe the
plain words of the Constitution, which were so plain that they
were not susceptible of construction. Until the homestead
*is laid off and allotted,* all the lands the debtor owns are in
law his homestead, and are protected from sale by this provi-

sion of the Constitution, which is self-executing. The allot= ment is not to *create* the homestead; this is done by the Constitution; but to restrict and define its location and boundary, if the homesteader owns more than $1,000 worth of land. But no sale of any part of it can be made by creditors until this allotment is made. These propositions are so well established that I do not encumber the opinion with a citation of authorities.

No homestead had been laid off here, and until that was done, *every part of Blaney Joyner's land was his homestead,* and any deed of his attempting to convey it without his wife's joining him was, in the language of the Constitution, *void.* This argument has not and can not, it seems to me, be answered.

But it is attempted to be answered by saying that, in the deed of trust to Warren, Blaney reserved his homestead right under the Constitution and laws of North Carolina. What were these rights, and where was the homestead? It has never been laid off and located, and if his deed was valid to convey the fee simple estate in the whole tract, as is claimed in the opinion of the Court, such reservation was void, as it was reserving the right to have a homestead located on Warren's land. This he could not do.

Section 2, Article X, of the Constitution provides that the "owner" of the land shall select the homestead, when his land is worth more than $1,000; that he shall be a resident of the State and the *"owner* and occupier" of the land so allotted to him as a homestead. So, it is seen, if Blaney's deed to Warren was valid and carried the title to Warren, Blaney had no land out of which he could have a homestead. If the homestead had been laid off and located by metes and bounds, his deed to Warren would have probably conveyed the estate outside the homestead boundary, for the reason that the homestead had been located, and Mrs. Joyner had no homestead in-

JOYNER *v.* SUGG.

terest in the land outside the homestead boundary.   See my opinion in *Thomas v. Fulford,* 117 N. C., 667.   If Blaney's homestead had been laid off and assigned to him before the deed to Warren, and it had contained no reservation, would it be contended that his deed, in which his wife did not join, would have conveyed this allotted homestead?   And if not, how can it be contended that it conveyed the whole tract before the homestead was laid off, when the whole tract was his homestead until it was reduced by assigning him a part of it, less than the whole.

But it is contended in the opinion that it is settled by the decisions of this Court that the deed from Blancy to Warren was a valid deed, and conveyed the title to Warren.   To this proposition I dissent.   The earlier decisions of this Court upon the subject of homestead, made soon after the Constitution of 1868, are full of inaccuracies, as the more recent decisions will show.   In the early decisions it will be seen that the homestead was treated as an "estate," and that part that remained after the determination of the homestead was treated as a remainder.   But this doctrine has long since been abandoned.   In *Bank v. Green* (Bynum, J.), exploded this doctrine, and showed that was no *estate* of any kind, but only a determinable *exemption* from sale under execution.   This was approved in *Marcom v. Hicks,* 90 N. C., 204, and numerous other cases since, until it has become the settled doctrine in this Court.

This is a very important modification of the law of homestead.   Under the doctrine, treating it as an *estate* with a *remainder* over, it was logical to hold that the "reversion," as it was generally called, could be sold under execution or by the homesteader without selling his particular *estate,* called the homestead; or to sell the fee, subject to his *homestead estate,* without his wife's joining with him in the conveyance, as the *homestead estate* was not affected by such sale:   It was

then treated as an *estate* that the homesteader had acquired, distinct from the original estate, and was treated as a new estate, as an estate in dower or curtesy is treated. Under that ruling of the Court it became necessary to pass the Act of 1870, to prevent the sale of the remainder or "reversion," as it was generally called. This act to prevent sales of the "reversion" was not brought forward in The Code of 1883, and all acts not brought forward in that compilation were repealed. And creditors commenced to enforce their executions against the "reversions." But in *Markham v. Hicks,* 90 N. C., 204, which was after the repeal of the Act of 1870, the Court held that, under the new doctrine, the homestead was not an *estate,* but only an exemption, and the estate and the homestead were but one entirety, and the "reversion," as it was called, could not be sold. And while the Court recognizes that the homestead is not an *estate,* it seems to me that it fails to recognize the results that follow from this change, in its opinion.

It would make but little difference whether it was called an estate or an exemption, if they were both the same in all except the name. So it will not be safe to put a decision upon these early decisions without considering the fact that when they were made, the homestead was considered an *estate,* but is now considered only an *exemption,* and a part of the entire estate, and can not be sold, although the Act of 1870 has been repealed. *Markham v. Hicks, supra.*

We are so often influenced by a comparison of cases, which are not analogous to the one under consideration, and when we are, it is likely to lead us into error. So, it will not do to compare the homestead with dower, and reason from the analogy. Dower is an *estate* given to the wife, and, under the Act of 1867, establishing the common law right of dower in this State, gives to the wife one-third of all the lands of which the husband was seized during *coverture,* while the

homestead is not an *estate,* and can only be claimed by the *owner of the land.* But the opinion of the Court says "the question is settled that the deed to Warren passed the title," and cites *Jenkins v. Bobbitt,* 77 N. C., 385; *Hinsdale v. Williams,* 75 N. C., 430; *Murphy v. McNeill,* 82 N. C., 221; *Castlebury v. Maynard,* 95 N. C., 281; *Jones v. Britton,* 102 N. C., 184; 4 L. R. A., 178; *Hughes v. Hodges,* 102 N. C., 236; *Vanstory v. Thornton,* 112 N. C., 196; 34 Am. St. Rep., 483; *Thomas v. Fulford,* 117 N. C., 667, and *Williams v. Scott,* 122 N. C., 545. I have already commented on *Thomas v. Fulford* and *Williams v. Scott.*

*Jenkins v. Bobbitt* and *Bruce v. Strickland* are cases where the marriage took place and the land was bought before the Constitution of 1868, and fell under *Sutton v. Askew,* 66 N. C., 172. *Murphy v. McNeill* is put on *Jenkins v. Bobbitt.*

*Jenkins v. Bobbitt* is one of the cases most strongly relied on by the Court as settling the opinion of the Court in this case. But it does not, as I think. It falls under the doctrine of *Sutton v. Askew,* and anything said in discussing the case outside of that is but *obiter.* But if it were not, it is clearly distinguishable from this case, as the homestead in that case was laid off *before the sale.*

In *Castlebury v. Maynard,* the homestead had been allotted to the plaintiff before the sale, upon his own petition, and the Court held that he could not make a good title to the land without his wife's joining him in the deed. It is true that the Court held that he could make a good title to that part not included in the homestead. See my opinion in *Thomas v. Fulford, supra.*

*Hughes v. Hodges* was by a divided Court, and I do not think it sustains the opinion in this case. And while I can not cite the dissenting opinion of Judge Merrimon in that case, which, in my opinion, was unanswered and is unanswerable, yet I wish specially to call the attention of the profession to it.

What *Jones v. Britton* and *Vanstory v. Thornton* have to do with the validity of the deed from Blaney to Warren, I am unable to see. And if these cases do not outweigh reason and authority, I do not think "it is settled" that the deed to Warren conveyed the title to this land to him. *Vanstory v Thornton* and *Jones v. Britton* show that the homestead is a condition, and runs with the land, as a sale did not relieve it from judgment liens that had attached while the homsteader was the owner. Whereas, if it had been personal to the homesteader when he sold the land, it would have discharged the lien.

The case of *Hinsdale v. Williams* shows that the Court in that case was treating the homestead as an *estate,* and that part, after the homestead fell in, as another *estate,* and the Court then treats it "as at common law," when there is no such thing as *estate or common law* in it.

The defendants' title depends on the title of J. A. E. Joyner, and her title depends on the title of Allen Warren. If Warren's title was not good, the defendants' title is not good; and if the deed of Blaney to Warren did not convey the land, it remained in Blaney, and the plaintiffs are entitled to recover. As I do not think the deed from Blaney to Warren conveyed the title, I think there was error.

The foregoing opinion was written as a dissenting opinion to the opinion of the Court as originally written, which held that the deed of Blaney Joyner to Warren conveyed the entire tract, and plaintiffs were not entitled to recover anything. Since then there has been a modification of the opinion of the Court and another opinion written. And while it does not seem to me that the conclusion arrived at is the logical result of the reasoning employed in the opinion, it is at least conservative, and may tend to quiet titles that otherwise might be disturbed by what I consider the logical deduction therefrom. Therefore, without abandoning the arguments

JOYNER *v.* SUGG.

contained in my opinion, I now file it as concurring in the opinion of Justice Douglas, which becomes the opinion of the Court.

COOK, J., concurring.   As the "homestead interest" is involved in this case, and the numerous decisions of our Court concerning it having failed to reach any settled construction, it seems to me that it will be best to disregard what has been so successfully unsettled and blaze out a new line, run by a construction of the Constitution as it is *written*, without reference to the rules governing estates at common law.

The following part of Article X of the Constitution defines what the homestead, as ordained by it, shall be: "Every homestead and the dwellings and buildings used therewith, not exceeding in value one thousand dollars, to be selected by the owner thereof, or, in lieu thereof, at the option of the owner, any lot in a city, town or village, with the dwellings and buildings used thereon, owned and occupied by any resident of this State, and not exceeding the value of one thousand dollars, shall be exempt from sale under execution or other final process obtained on any debt."   *   *   *   Sec. 2.

"The homestead, after the death of the owner, shall be exempt from the payment of any debt during the minority of his children, or any one of them."   Sec. 3.

"If the owner of a homestead die, leaving a widow, but no children, the same shall be exempt from the debts of her husband, and the rents and profits thereof shall enure to her benefit during her widowhood, unless she be the owner of a homestead in her own right."   Sec. 5.

"Nothing contained in the foregoing sections of this Article shall operate to prevent the owner of a homestead from disposing of the same by deed; but no deed made by the owner of a homestead shall be valid without the voluntary signature and assent of the wife, signified on her private examination according to law."   Sec. 8.

Prior to the adoption of our present Constitution (1868), a judgment creditor had the right to have sold under execution *all* of the debtor's land, leaving him without home or shelter for himself and family. To prevent such homelessness, the sections above quoted were ordained and incorporated into our organic law, and we now have to construe their meaning in deciding the questions presented in this appeal.

We do not understand that the purpose of creating the homestead was to prevent the creditor from collecting his judgment out of the homestead, but simply to postpone the time of doing so—thus giving the homesteader a chance to provide a living for himself and family, if he should have one, and an opportunity to make the money to pay the debt. The docketed judgment by statute creates a lien upon it, which remains until the time limit of the exemption expires.

The word "homestead," in its general significance, as defined by Webster, means "the home place"; "a home and the enclosure or ground immediately connected with it"; "the home or seat of a family." Its existence so defined is general, and is not confined or limited to any class or condition of people. But as defined by our Constitution, it is limited to that class of owners who are involved in debt; so badly involved that it would require a sale of substantially all their property to pay their debts. For this class, the "homestead" of one thousand dollars worth of real estate is created by our Constitution. If provided for any other class, why exempt it "from sale under execution or other final process obtained on any debt"? Art. X, Sec. 2. "Shall be exempt from the payment of any debt during the minority of his children or any one of them," Sec. 3; "the same shall be exempt from the debts of her husband," Sec. 5. Its association and use are inseparably connected with *exemption from sale for the payment of debt.* Therefore, it must necessarily follow that if there be no debt for which the owner of a homestead is liable,

there can be no "homestead" as *defined* and *created* by our *Constitution*. But, as soon as the debt or liability to pay is created, this exemption from the payment of the same out of the land designated and of the prescribed value, called the "homestead," springs into existence and action, and stays the hands of the selling power.

By "owner," as used therein, is meant he who holds the freehold estate in the land, whether of inheritance or not of inheritance, whether the legal or the equitable estate.

As to such homestead, as is so defined, no sale can be ordered or made by statute to enforce the collection of any debt due by the owner during the time limited in the Constitution. If the owner be tenant for life, his estate in the land dies with him. If he be tenant in fee, it descends to his heirs at law or devisees, but the hand to sell is stayed until the contingencies provided in sections 3 and 5 happen, and then the right of sale begins, and not before. During the stay of sale, the judgment lien remains upon the title which is vested in the judgment debtor; but the judgment debtor's title remains in him just as it did before the judgment lien attached. If he owned a fee simple estate, it continued to be a fee simple, simply incumbered with the lien and nothing more. Under our statute, a docketed judgment becomes a lien upon all of the "owner's" (debtor's) land; the excess of a thousand dollars' worth may be sold under execution issued upon it, whereby the title of the "owner," as to that, is divested from him and transferred to another, and he loses all estate and interest in it. But, as to that part *exempt* from sale, the "homestead," the title remains vested in the "owner," incumbered, it is true, with the judgment lien, nothing more. The "homestead," or "right of homestead," creates no estate in the owner; the estate is created by the title under which he acquired and holds the land, and in no other way. No remainder is created by the stay of sale, because no *estate,* "par-

ticular or otherwise, passes out of the owner or is carved out of the fee. No *title* passes from the owner by or on account of the homestead, but it *remains* in him; therefore, there can be no reversion—there was no title out of him to revert. The entire fee remains in him. Should the owner pay off the judgment, the lien would vanish and there would be no particular estate to fall in, or outstanding title which could come back; so the estate and title would remain just as before in the tenant in fee, the owner or homesteader. Upon the death of the owner or tenant in fee, the title to the land descends to his heirs, carrying with it the right of entry and possession without a change of title—only encumbered with the lien, which the heir could extinguish by paying the judgment, or he could refuse to pay and allow the fee to be sold and the excess of the proceeds of sale, after discharging the lien, to be paid over to the personal representative or heir, according to law in such cases.

Without debt there can be no "homestead," as defined by the Constitution. When the owner creates his debt, the Constitution creates his homestead; when the owner extinguishes his debt, the Constitution extinguishes his homestead. They are constitutional inseparable companions. If there be no debt, there is no homestead or homestead right. Therefore, a deed executed by the husband who owes no debt (the wife not joining in the deed) conveys the land free from homestead, but subject to the dower right; but if he be in debt, the deed is *invalid* (section 8) as to so much of the real estate designated as is worth one thousand dollars, but is valid (subject to dower right) as to the excess, whether the homestead has been laid off or not, for *it* (the $1,000 worth) becomes definite and certain when the homestead becomes definite and certain, that is, when the homestead is, or may be, laid off and allotted or assigned. The laying off and assignment of the homestead is not essential to create it. It is created and

defined by the Constitution (section 2), and any resident of this State is entitled to have at all times as much as one thousand dollars worth of his real estate (as therein designated) exempt from sale, and no more, at any time. Should the land assigned increase in value beyond the value limited, the excess could be sold and the proceeds applied to the judgment debt. Should it decrease in value, the deficiency could be claimed in any land or town or city property afterwards acquired by him. The identity of the thousand dollars worth can be certain by laying it off; so, whether laid off or not is immaterial. *Id certum est quod certum reddi potest.*

At the time Blaney conveyed the land to Warren, he was in debt and made the deed of trust to secure his debts, but he did not intend to convey his homestead (one thousand dollars worth of it) ; but conveyed the land "subject to and reserving his homestead rights therein as secured by the laws of North Carolina," in which deed his wife did not join. His "homestead rights" being the right to own one thousand dollars worth of the land in fee or for life, subject to any lien for debt, by *reserving* the "homestead rights," he reserved his title in fee to that much of the land. By his deed, title passed to all of the land *in excess* of one thousand dollars worth, but did not pass to one thousand dollars worth thereof, which could at any time have been made certain and definite by laying off the same in conformity with section 2, Article X. So, not having conveyed his "homestead," the sale was not invalidated under section 8, Article X, and the title to that much of the land remained in him, and upon his death descended to his heirs at law. The sale by Warren, trustee, conveyed to Davis, the purchaser, the *excess* of one thousand dollars worth thereof; the title to which passed to J. A. E. Joyner by the conveyance of Davis to her under the parol trust under which Davis bought. So it is clear to me that plaintiffs, heirs at law of Blaney Joyner, are entitled to re-

cover so much of that tract of land, including the dwellings and buildings used therewith, as will not exceed in value one thousand dollars, to be selected by them, the present owners thereof.

CLARK, J., dissenting.    I concur with the concurring opinion of the Chief Justice that "it does not seem to me that the conclusion arrived at (in the opinion of the Court) is the logical result of the reasoning employed in the opinion."    Indeed, it seems to my mind to lead irresistibly to the opposite result.    If, as Bynum, J., says in *Bank v. Green,* 78 N. C., 247 (which is twice cited with approval by the Court in this case), the homestead is "a determinable exemption from the payment of the homesteader's debts in respect to the particular property allotted to him," it necessarily follows that when Blaney Joyner conveyed all his realty, "subject to and reserving his homestead rights therein," the grantee took all, subject to that "determinable exemption," and upon the determination of his exemption by his death (leaving no minor children), there was nothing left to pass to his heirs at law.

The "reversion," or, more accurately speaking, "the land covered by the homestead subject to the determinable exemption," was liable to sale subject to such determinable exemption, till an act was passed to prevent it, and that such land is liable to be subjected, the sale being merely postponed till the determination of the homestead, is evidenced by the fact that a docketed judgment becomes a lien thereon, and the statute of limitations is suspended as to such lien.    The law forbids the sale under execution of such "reversion," *i. e.,* the land subject to the determinable exemption, not because it is not property of the debtor, but because, at a forced sale thereof, subject to an exemption of uncertain duration, the property would  bring a song, and would either be bought in for the homesteader, or more probably, as was the practical experi-

ence, by speculators. Hence, the statute was passed suspending sale under execution till the falling in of the "determinable exemption," but preserving in force the lien of judgments thereon unimpaired by any statute of limitation. There is no such evil to be guarded against by legislation, when the owner makes a voluntary sale, and there is no reason to restrict his *jus disponendi*. The reversion (so called) being the debtor's property, and something apart from his "determinable exemption," on which last there could be no judgment lien, any owner thereof when, as in this case, no judgment had been docketed, could sell it, and there is no statute to prevent a sale or conveyance thereof by him.

That the land allotted is something separate and apart from the "determinable exemption," is evidenced by the further fact that if it increases in value, the excess may be valued and sold under an execution. Clark's Code (3d Ed.), Sec. 504a. If it is separate and apart, a conveyance of all the realty, "reserving only the homestead rights," which is held to be "a determinable exemption," conveys the land subject to such determinable exemption.

When, therefore, Blaney Joyner conveyed his realty, "subject to his homestead rights," the grantee took it all, subject only to the "determinable exemption" upon that part thereof which should be allotted as his homestead. At the determination of that exemption, which is all that Blaney Joyner reserved, there was nothing to go to his heirs at law. *The very fact that the homestead is "not an estate but a determinable exemption," settles that. Only an estate could devolve upon his heirs at law. His "determinable exemption," which is all he reserved, determined at his death.*

Indeed, this point has been often before the Court, and has been settled against the plaintiffs by our repeated decisions that a conveyance of land "subject to the homestead right" of the grantor is valid, and conveys not only the excess, but

also the reversion of the homestead.    The facts in *Jenkins v. Bobbitt,* 77 N. C., 385, presented a stronger case for the plaintiff's contention, in that there the homestead had been actually set apart by metes and bounds before the conveyance, yet Pearson, C. J., says: "Was a conveyance of the land, *subject to the homestead,* valid to pass the reversion? His Honor ruled that it was invalid for want of assent of the wife of the defendant.    The wife has no estate, interest or concern in the reversion.    It does not take effect in possession until after the termination of the homestead estate.    So we are at a loss to see on what ground the assent of the wife should be necessary in order to give validity to the deed of the husband, by which he conveys his estate in reversion."    By "estate in reversion," he indicates merely the "allotted land," subject to the determinable exemption.    The word "reversion" is used merely for lack of a better, and because the land, when freed from the determinable exemption, resembles an "estate by reversion," and not because it is such.    The idea being clear, the use of a technically inaccurate expression (for lack of a better) should not cause confusion.    Then, after adverting to the statute which prevents a sale of such "reversion of the homestead" under execution, and the lack of necessity for such statute, if the wife could prevent such sale by her veto, and that the Court in *Hinsdale v. Williams,* 75 N. C., 430, had extended the operation of the act to forbid sales of the reversion by administrators to pay debts, Pearson, C. J., further says:    "But a sale by the owner of a homestead of his estate in reversion stands as at common law, and the owner has full power to sell it."    This case has never been overruled or questioned, and we find in the annotated reprint of that volume (77 N. C.) that it has been cited with approved in *Murphy v. McNeill,* 82 N. C., 221; *Castlebury v. Maynard,* 95 N. C., 281; *Jones v. Britton,* 102 N. C., 166; 4 L. R. A., 178; *Hughes v. Hodges,* 102 N. C., 236-262;

*Vanstory v. Thornton,* 112 N. C., 196; 34 Am. St. Rep., 483; *Thomas v. Fulford,* 117 N. C., 667, and *Williams v. Scott,* 122 N. C., 545.

In *Thomas v. Fulford,* 117 N. C., at pages 678, 684, 688, the majority of the Court held, in seriatim opinions, that a conveyance "subject to homestead right" was valid, and carried the entire estate of the grantor, including the reversion of the homestead, and subject only to the homestead right (which right only exempts the homestead from sale during the life of the grantor and till his youngest child became of age), laid off or to be laid off.

In *Williams v. Scott,* 122 N. C., 545 (the last case), this was reaffirmed by a unanimous Court, Montgomery, J., saying: "The laws of North Carolina prohibit a Sheriff from selling the reversionary interest in homestead lands under execution, but they do not prevent the homesteader himself from conveying it. *Jenkins v. Bobbitt,* 77 N. C., 385."

As to dower rights, the conveyance of the husband of his realty without the joinder of his wife is valid, subject to her contingent right of dower. *Scott v. Lane,* 109 N. C., 154; *Gatewood v. Tomlinson,* 113 N. C., 312.

In my judgment, the Judge below ruled correctly. I can find no error in any respect.

Montgomery, J., concurs in the above dissenting opinion.