JONES v. RAILROAD.

(Filed October 2, 1906).

*Railroads—Negligence—Lawful Act—Rule of*
*Prudent Man.*

1. Where, in an action to recover damages for the alleged negligent killing of plaintiff's intestate, the intestate was sitting on a box on the platform of a passenger car and the conductor as he came out on the platform moved like he was going to step around intestate, and just at the time intestate got up from the box the conductor signaled the engineer ahead to put the flat-car on a sidetrack, and about the same time intestate went to step across to the flat-car, the car suddenly pulled loose and intestate fell between the cars and was killed, a judgment of nonsuit was proper, there being no evidence that intestate was called upon, in the discharge of any duty, to go on the flat-car or that the conductor could have foreseen that he would do so—it being conceded that the act of directing the flat-car to be cut loose was proper to be done and that there was no negligence in the means employed.

2. Where an act causing injury is in itself lawful, liability depends not upon the particular consequences or result that may flow from it, but upon the ability of a prudent man, in the exercise of ordinary care, to foresee that injury or damage will naturally or probably be the result of his act.

ACTION by Thad. Jones, Jr., administrator of W. C. Brock, against East Carolina Railroad Company, heard by *Judge James L. Webb* and a jury, at the February Term, 1906, of the Superior Court of DUPLIN.

This action is prosecuted to recover damages sustained by plaintiff by reason of the death of his intestate, alleged to have been caused by the negligence of defendant. Upon the conclusion of the plaintiff's testimony defendant demurred and moved for judgment of nonsuit. Motion allowed. Appeal by plaintiff.

*Stevens, Beasley & Weeks* and *Rountree & Carr* for the plaintiff.

*John L. Bridgers* for the defendant.

CONNOR, J., after stating the facts: Plaintiff alleged that, prior to and on the day of the accident, his intestate was employed by defendant as section-master. That he was directed to board the train at Fountain, with certain section-hands under his charge, and enter the passenger car, to which a flat-car was attached, and go to Toddy and other stations on the road for the purpose of loading certain flat-cars with iron, etc. That while sitting on the platform of the passenger car the defendant's conductor negligently and without notice or warning to his intestate caused the said flat-car to be detached from said passenger car, at which time his intestate was walking from the rear end of said passenger car to the flat-car, and by reason of such negligence said intestate fell between the cars and was killed. Defendant admitted the employment, and the direction given to enter the passenger car for the purpose alleged, and denied that its conductor was guilty of negligence, etc.

The testimony showed that the passenger car was divided into three compartments. The rear one was for the accommodation of white passengers, the middle for colored, and the front end for baggage. There was sufficient room in the compartment for whites to permit plaintiff's intestate to ride therein. There was no railing around this end of the platform. It was used for loading trunks, etc.

The plaintiff sets forth the testimony relied upon to sustain the charge of negligence as follows: "As the train was approaching Toddy station, Mr. Stamper, the conductor, came out on the platform and moved like he was going to step around Willie Brock. Mr. Brock got off the box on which he was sitting and started to step across from the passenger car to the flat-car, where I and some of the laborers were; they pulled ahead, that is, the engine went on to place the flat-cars on the sidetrack. At this time the train was running at a good rate of speed—eight or ten miles an hour—and the train slacked up and butted together so that Frank Dancy could cut the flat-cars loose from the passenger car, for the purpose of putting the flat-cars on the sidetrack. Just at the time that Willie Brock got up from the box Mr. Stamper signed the engineer ahead, and about the same time Mr. Brock went to make a step, the car suddenly pulled aloose and Mr. Brock stepped and fell between them, and the passenger coach, which was still running at the rate of eight or ten miles an hour, ran over him. Frank Dancy was a colored man, and he was a brakeman on the train and he was working for the railroad at that time. I saw the signal given to go ahead when the cars were cut loose. The conductor threw up his hand for the engineer to go ahead. As soon as this was done, Mr. Brock fell through. Mr. Brock had gotten up from the box and was walking around to make his step when the signal was given. I do not think Mr. Brock saw Mr. Stamper give the signal. I was about two and one-half feet from the end

142—14

of the flat-car when I saw the signal given by Conductor
Stamper for the engineer to pull ahead. I was four or five
feet from the conductor when he signaled the engineer to go
ahead. The conductor said nothing to me. Mr. Brock was
standing 'kinder' with his back to the conductor when the sig-
nal was given. I heard the conductor say nothing. I reckon
the conductor saw us on the platform. He came out on the
platform."

Before proceeding to discuss the main question involved in
the plaintiff's appeal, it will be well to understand clearly
the position of the parties at the moment the conductor sig-
naled the engineer. The plaintiff's intestate was sitting on a
box on the platform of the passenger car. The conductor as
he came out on the platform "moved like he was going to
step around Brock." "Just at the time Brock got up from
the box the conductor signed the engineer ahead and about
the same time Brock went to make a step, the car suddenly
pulled aloose and Brock fell between them." We need not
consider Brock's conduct in attempting to cross the space
between the cars in discussing the question of the conductor's
negligence, which lies at the threshold of the case. We attach
no importance to the fact that Brock was on the platform
instead of inside the car, nor to the fact there was no railing
around the platform. Neither of these conditions are proxi-
mately related to the injury.

The pivotal question is, What duty did the conductor owe
to Brock in the light of the conditions as they existed and as
he saw them, in ordering the cars to be cut loose? There is
no evidence tending to show that Brock was called upon, in
the discharge of any duty in the course of his employment,
to go upon the flat-car, or that there was any circumstance
suggesting to the mind of the conductor that he would do so.
So far as the evidence shows, the movement of Brock was the
result of an instantaneous mental operation of which the
conductor had no suggestion and no reason to anticipate.

We assume, in this connection, that Brock did not see the conductor "sign the engineer." Adopting the definition of negligence given by *Baron Alderson,* 25 L. J. Ex., 212, which is practically accurate, as "The omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do," the question arises, What duty did the conductor owe the plaintiff's intestate at the time of and in regard to directing the flat-car to be cut loose? It is conceded that the act itself was proper to be done and that there was no negligence in the means employed for doing it. There is no suggestion that there was any breach of duty in either respect. It is said that the act was the proximate cause of the injury, or that if the cars had not been cut loose at that moment the plaintiff's intestate would not have been injured. This must, for the purpose of this decision, be conceded.

The case then comes to this: The conductor was doing a lawful act in a lawful way, and, by reason thereof, the intestate was injured. What, if any, element is wanting to give plaintiff a complete cause of action? Defendant says that there is no evidence from which a reasonable man could have foreseen the result from the act. The plaintiff denies this and insists that the question should have been submitted to the jury. It is upon the answer to this contention that the legal liability of the defendant depends. If one, in a lawful manner, does what he has a right to do, and he can, or should by the exercise of reasonable care, foresee that his act will inflict injury upon another, he should either desist or, at least, give the other warning so that he may avoid the injury. It will at once occur to the mind that this proposition is not strictly, and without limitation, accurate. It is sufficiently so for the purpose of this discussion. It is difficult, if not practically impossible, to lay down general propositions upon

so evasive and complex a subject which are not open to qualification.

Applied to such cases as the one before us, the language of *Sir Fred. Pollock* is applicable: "The substance of the wrong itself is failure to act with due foresight.   *   *   *   Now a reasonable man can be guided only by a reasonable estimate of probabilities.   If men go about to guard themselves against every risk to themselves or others which might by ingenious conjecture be considered as possible, human affairs could not be carried on at all.   The reasonable man then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable nor waste his anxiety on events that are barely possible.   He will order his precautions by the measure of what appears likely in the known course of things.   This being the standard, it follows that if in a particular case (not being within certain special and more stringent rules) the harm complained of is not such as a reasonable man in the defendant's place should have foreseen as likely to happen, there is no wrong and no liability."   Pollock on Torts, 39-40.

In *Drum v. Miller,* 135 N. C., 204, *Mr. Justice Walker,* in a well-considered opinion, discussing the several phases of the question involved herein, says: "There is a distinction, we think, between the case of an injury inflicted in the performance of a lawful act and one in which the act causing the injury is in itself unlawful, or is, at least, a wilful wrong. In the latter case the defendant is liable for any consequence that may flow from his act as the proximate cause thereof, whether he could foresee or anticipate it or not; but when the act is lawful, the liability depends not upon the particular consequences or result that may flow from it, but upon the ability of a prudent man, in the exercise of ordinary care, to foresee that injury or damage will naturally or probably be the result of his act."   The same principle is well stated by *Mr. Justice Hoke* in *Ramsbottom v. Railroad,* 138 N. C.,

38: "The plaintiff is required to show  *  *  *  first, that there has been a failure to exercise proper care in the performance of a legal duty which the defendant owed to the plaintiff under the circumstances in which they were placed, *  *  *  and second, that such negligent breach of duty was the proximate cause of the injury—a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed."

Barrows on Neg., 10, quoting the language of *Channell, B.,* in *Smith v. London & S. W. Railroad,* L. R., 6 C. P., 21, says: "Where there is no direct evidence of negligence, the question of what a reasonable man might foresee is of importance in considering the question whether there is evidence for the jury of negligence or not." He further says: "It must be kept in mind that a breach of duty is essential to a recovery in an action for negligence. Harm may result directly from a non-negligent act; there may be *damnum* without *injuria.* A person, in a careful and prudent manner, attempts to separate two dogs which are fighting, and accidentally injures plaintiff. Here the defendant's act was unquestionably the proximate cause of the injury; but it is equally unquestionable that no one in defendant's position could have foreseen the possibility of injury resulting to any one, and, if he used the proper degree of care to separate the dogs, there can be no liability." Barrows, 12. Many cases are cited illustrating the principle, but, as the author well says, it is difficult to classify them. *Hudson v. Railroad,* at this term, is an illustration of the rule; there the act of "kicking the cars" was negligent and the defendant is responsible for the injury which proximately flowed from the negligent act, although he did not and could not have foreseen the particular injury.

In the case which we are considering we do not find any evidence, and by this we mean any fact or reasonable inference to be drawn from the facts, tending to show that the conductor could, under the existing conditions, have foreseen that plaintiff's intestate would step on the flat-car. That was the only duty which he owed him, and there being no breach in that respect, his Honor properly rendered judgment of nonsuit. Of course, as is illustrated by the ingenious argument of plaintiff's counsel, it is not impossible to speculate or form conjectures raising inferences remote and improbable that the conductor may, by the most careful analytical process, have suspected that plaintiff's intestate would step on the flat-car. This is not the standard by which to measure his conduct. The law consists of practical, workable rules, based upon observation and experience, not scholastic speculation. As was said by a philosophical writer upon another subject, courts must cease to be pedantic and endeavor to be practical. *Ins. Co. v. Railroad,* 138 N. C., 42.

We have not considered the question of contributory negligence for manifest reasons. Plaintiff relied upon the case of *Whisenhant v. Railroad,* 137 N. C., 349. That case is distinguished from this in that there the train was approaching and near to the station at which the plaintiff, with the other hands, usually alighted, and the engineer gave a sudden jerk whereby plaintiff was injured. Here, the car was some distance from the depot and running at eight or ten miles an hour. In *Whisenhant's case, supra, Clark, C. J.,* says: "The engineer, instead of stopping as usual at that point in response to a signal from the conductor, suddenly put on steam, which caused a sudden and violent jerk, which threw the plaintiff on the track," etc. The distinction between the cases is manifest. The judgment of nonsuit must be

Affirmed.